State ex rel. Mize vs. McElroy.

## No. 11,054.

## THE STATE EX REL. H. N. MIZE VS. J. P. McELROY, RETURNING OFFICER.

The language of the statute relative to printed ballots expresses the legislative will. It is mandatory.

The legislative intent must be taken as expressed by the words which the Legislature has used.

The name of a candidate written on the face of an election ticket in lieu of the name of another candidate printed on the ticket should not be counted in ascertaining the result of the election.

The Legislature has imposed a positive and absolute duty on the voter to cast a printed ballot.

The statute, in that respect, is not subject to liberal construction.

Where the meaning of the statute is clear, those upon whom compliance devolves have no right to engraft exceptions or make modifications, or depart from its plain letter.

A fair consideration of the statute leads to the conclusion that the Legislature intended compliance with the provisions in relation to printed ballots.

APPEAL from the Tenth Judicial District Court, Parish of De Soto. *Hall, J.*

*E. W. Sutherlin* and *C. W. Elam* for Plaintiff and Appellee:

1. All the names of persons voted for shall be printed on one ticket of white paper of uniform size and quality. Sec. 4, Act 101 of 1882.

2. Although the right of franchise is a sacred one, yet it is a right derived only from the Constitution and laws. The State has the legislative power to prescribe the mode of its exercise; and when a specific mode is so prescribed, the right must be exercised pursuant to that mode, and not otherwise. Written ballots are without legal effect and should not be counted. See notes to p. 349, Am. and Eng. Encyclopedia of Law, Vol. 6, and cases cited.

*Wm. Goss* for Defendant and Appellant:

Relator's contention is that the votes polled for Crosby, being written and not printed, should not be counted, citing Act 101 of 1882. These votes were received and counted by the commissioners of the election. Relator does not allege fraud, error or any other illegality. He admits that Crosby received a majority of the votes cast, but claims that such votes were illegal because not printed. On the trial of the writ, *a quo*, the court sustained relator's contentions and made the writ permanent.

The judge, in his written opinion, assigned, in substance, as a reason for his decision, that Act 101 of 1882, being an amendment of Act 58 of extra session of 1877, is mandatory and not directory.

This is in conflict with the reason and the law governing such cases. The purpose of voting is to ascertain the intention of the voter and the will of the majority, and where this is done without violating any prohibitory law, the votes must be counted. Cooley's Con. Lim. fifth edition, pp. 769, 770.

Statutes being designed to preserve the secrecy of the ballot, and to prevent fraud, intimidation and bribery, will generally be considered mandatory, and this will be so in all cases where the statutes provide that a ballot varying from the requirements of the law shall not be counted; but if this provision is lacking they should not be rejected if the variations are but trifling. American and English Ency. of Law, No. 6, Sec. 8, pp. 348, 349, note 1. McCrary on Elections. Secs. 190 to 193 inclusive.

A ballot may be defined as "a paper ticket, upon which the voter expresses his preference upon the question submitted at the election, by printing, writing or signs, or a combination of these methods of expression." American and English Ency. of Law, No. 6, Sec. 2, p. 342, note 2.

Where the Constitution provides that all ballots should be fairly writtten, the term "written" means expresses by means of letters, and printed ballots come within this definition. Ibid., p. 344, note 1. Cooley's Con. Lim., fifth edition, pp. 760, 761; McCrary on Elections.

A ballot cast by an elector, in good faith, should not be rejected for failure to comply with the law in matters over which the elector had no control. McCrary on Elections, Secs. 503, 508, 509, 511; 1 An. 366; 13 An. 301; 27 An. 507; 29 An. 614.

Act 101 of 1882 is only directory, because it provides no penalty for any variance from its provisions.

---

The opinion of the court was delivered by

BREAUX, J. The relator sued out a mandamus against the returning officer of the parish of DeSoto to compel him to exclude sixty-seven votes cast for his opponent from his return to be made to the Secretary of State of the result of the election held on April 19, 1892, also from his count and compilation, and he prays that the said votes be decreed illegal and void.

The facts admitted are: that the relator, Mize, was a candidate for the office of justice of the peace of Ward 8 of DeSoto parish, at the said election.

That his name was printed, as a candidate for said office, on all the ballots cast in said ward, and he received fifty-nine votes.

That his name, as printed, was erased from sixty-seven other ballots cast, and the name of W. R. Crosby was written across the face of these ballots where his (relator's) name was printed.

That the relator, at the time, objected to the counting of these written votes for Crosby, and that notwithstanding his written protest filed with the commissioners, these written votes were counted for Crosby, and count thereof was kept on the tally sheets, and returns thereof were made to the returning officer. It is also admitted that the office of justice of the peace of said ward, involved in this suit, is worth over two thousand dollars ($2000).

The question for our determination is:

Should a ballot cast be counted in ascertaining the result of an election, on the face of which the printed name of a candidate was. erased, and the name of another candidate substituted in writing?

Under the act of 1877, to regulate and maintain the freedom and purity of elections, and to punish persons for false, fraudulent or illegal voting, the names of persons voted for were required to be written or printed on one ticket.

*        *        *        *        *        *        *        *

*The statute applying is:* Sec. 23 of the said act was amended by Act 101 of 1882, as follows:

"That all the names of persons voted for shall be *printed* on one ticket or ballot of white paper, of uniform size and quality, to be furnished by the Secretary of State."

*Legislative power over the forms of the ballot and manner of voting:* The right of suffrage being a political and not a natural right, it is within the power of the State to prescribe how it shall be exercised.

The manner of voting, provided by statute, is one of the reasonable regulations.

The limitations imposed for the purpose of guarding against fraud, undue influence and oppression, and of maintaining the secrecy of the ballot, are within the legislative and police powers.

That the ballots shall be printed does not add to the constitutional qualification of the voter, and therefore falls within the general authority of legislative laws.

*The legislative intent is clearly expressed.*

In the first act, that of 1877, the words were "the ballot shall be written or printed;" in the amending act "it shall be printed."

The legislative will can not be misunderstood.

The intention of the Legislature should control absolutely.

When that intention is clearly ascertained, those upon whom it devolves to execute the statute have no other duty to perform than to follow the legislative will.

While all the minute details of the statutes relating to elections are not mandatory, they are mandatory in requiring that the ballot shall be printed.

The positive requirement of the statute does not admit of its being treated as merely directory.

By qualifying a statute as directory its requirement is avoided; the intention of the Legislature, however plain, is defeated.

It is desirable that the Legislature should declare in what respect they mean any particular provision to be void, in event of non-compliance with its terms, and what consequence they intend shall result from non-compliance.

In the absence of this great difficulties arise.

We are not willing, however, in the absence of such a declaration, to hold a law as directory in cases in which the intention of the Legislature is clearly and emphatically expressed.

We prefer a strict construction to the "extensive and comprehensive;" each has able advocates and many authorities in its support.

The grounds of objection urged on the part of the respondent, such as that the purpose of voting is to ascertain the intention of the voter and the will of the majority, and that a ballot cast by an elector, in good faith, should not be rejected for failure to comply with the law in matters over which he had no control, if broadly and liberally applied, would defeat the object of the statute relating to the printing of the tickets on a ballot of white paper, furnished by the Secretary of State, and would render ineffectual the provisions applying to the throwing out and not counting folded tickets, and even those relative to the required certificate of registration, although the purpose of the law is well defined and clear.

*    *    *    *    *    *    *    *

*Authorities:* Constitutional and statutory provisions for the conduct of elections are either mandatory or directory, and a violation of mandatory provisions will avoid the election, without regard to the motive, or the person guilty of the violation, and without reference to the result. Am. and Eng. Ency. of L., Vol. 6, p. 325.

In Rhode Island the law requires that each ballot shall be so printed as to give each voter a clear opportunity to designate by cross marks, in a sufficient margin at the right of the name of each candidate, his choice of candidates, and that each voter shall prepare his ballot by marking, in the appropriate margin or place, a cross opposite the name of the candidate of his choice, and that no voter shall place any mark upon his ballot by which it may be afterward identified.

The court decided that no mark other than the cross can be used; that it must be placed in the margin opposite the name of the candidate. American Dig. 1891, p. 1419.

In many of the States there are statutes prescribing the form of

the ballots, the kind of paper, and prohibiting any marks, figures or devices by which one can be distinguished from another.

These statutes, being designed to preserve the secrecy of the ballot, and to prevent fraud, intimidation and bribery, will generally be considered mandatory. Am. and Eng. Ency. of L., Vol. 6, p. 349.

Directions given by a sovereign in regard to a matter over which his power is conceded, would, according to the ordinary use of language, be held to involve, as its correlative, obedience. Sedgwick's Statutory and Const. Law; p. 318, note.

These decisions maintain the principle that mandatory provisions not complied with in an election will result in its avoidance, without reference to motive or person.

In those States in which the ballots must be printed, and the name of the candidate designated by cross marks, the required marginal notes must be placed as required by statute.

That the voter should readily comply with the legislative will, is clearly expressed.

The voters who cast the sixty-seven ballots did not comply with the statute.

In an organized state of society the majority bind the minority by complying with mandatory laws in expressing the popular will.

Judgment affirmed at appellant's costs.