(59 South. 909.)

No. 19,658.

THORNHILL v. WEAR.

(Nov. 7, 1912.)

*(Syllabus by the Court.)*

1. PRESCRIPTION — LAW OF THE CASE — AP-POINTMENT OF JUDGE AD HOC.

The question of prescription was decided on application for a writ of prohibition and certiorari. The decision lays down the law on that particular point in so far as this case is concerned. A judge ad hoc was appointed at as early a date as possible, and the case proceeded with.

2. ELECTIONS (§ 154*)—PRIMARY ELECTIONS—CONTEST—PRESCRIPTION.

The answer and the reconventional demand are considered as having been timely filed.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

3. STATUTES (§ 125*)—SUBJECTS AND TITLES—EXPRESSION OF SUBJECT IN TITLE.

Act 198 of 1912 is constitutional, as the act is not subject to the constitutional objection of being broader than its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 187–191; Dec. Dig. § 125.*]

4. ELECTIONS (§ 126*)—PRIMARY ELECTIONS—BALLOTS.

The law provides that in a primary election the ballots shall be furnished by the Secretary of State, and "shall be printed upon white paper, and each ballot shall contain a detachable slip which shall be handed to the voter." This provision is mandatory, and no other kind of ballot shall be counted in an election.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. § 126.*]

5. ELECTIONS (§ 154*)—PRIMARY ELECTIONS—CONTESTS.

In a contested primary election, the ballots are the best evidence, and the court should open the ballot boxes, when necessary, if the issues as presented so justify.

[Ed. Note.—For other cases, see Elections. Cent. Dig. § 136; Dec. Dig. § 154.*]

*(Additional Syllabus by Editorial Staff.)*

6. STATUTES (§ 109*)—TITLES—SUFFICIENCY.

The title of a statute need not mention the means by which it is intended to accomplish a general purpose; and, if the title does not mislead and is not such as to take one by surprise, it may be good, though not as ample as it might be.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 136–139; Dec. Dig. § 109.*]

7. ELECTIONS (§ 154*)—PRIMARY ELECTIONS—CONTEST—PLEADING.

In a contest for office, the pleader should allege with some particularity all of his grounds, whether he is originally plaintiff or plaintiff in reconvention.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

8. ELECTIONS (§ 154*)—PRIMARY ELECTIONS—CONTEST—PLEADING.

In a contest of a primary election, the pleading of the contestant should allege not only the number of illegal votes cast, but should allege by whom they were cast, and the reason, as applied to each voter, that his ballot was not legal.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

9. ELECTIONS (§ 154*)—PRIMARY ELECTIONS—CONTEST—PLEADING.

In a contest of a primary election, the contestant need not make his allegations as to ballots cast without detaching the slips as specific, as is required in the case of illegal ballots.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

Appeal from Thirtieth Judicial District Court, Parish of Caldwell; W. M. Wallace, Acting Judge.

Action by Commodore Perry Thornhill against George Wear to contest a primary election. From a judgment for the contestee, the contestant appeals. Reversed and remanded.

Hundley & Hawthorn, of Alexandria; and Grisham & Oglesby, of Winnfield, for appellant. Hudson, Potts & Bernstein, of Monroe, Foster, Milling, Brian & Saal, of New Orleans, George Wear, Jr., of Jena, and N. S. Woody, of New Orleans, for appellee.

BREAUX, C. J. This suit was instituted by plaintiff in order to have annulled the action of the judicial executive committee for the district of La Salle and Caldwell in proclaiming on the 7th day of September, 1912, that defendant had received four votes majority over the plaintiff, and in declaring him the nominee. Plaintiff claims the nomination, and wishes to have his name substituted to that of defendant as the nominee to be elected on the 5th day of November, 1912.

The lower court decided on plaintiff's petition that he received 712 legal votes and the defendant 713, a majority of 1, which was sufficient to declare the defendant the nominee, if the findings of the court be correct.

From this judgment the contestant appealed.

Defendant joins in the appeal, and asks that the judgment be amended by sustaining his exception, overruled by the district court, to the jurisdiction of the court, and by sustaining the plea of prescription, filed on the ground that over two days had elapsed from the date of promulgation of the returns by the district committee to the date that the contest was filed.

[1] Following the reverse of the order followed by defendant, we take up the plea of prescription first, for, if sustained, it will dispose of the suit.

Defendant invokes the statute:

"No contest should be entertained unless brought within two days after the official promulgation of the result of the election."

The petition was filed and an illegal order was obtained from the clerk of court authorizing the contest to be filed and directing the defendant to answer. This illegal order was served upon the defendant over a week after the two days had elapsed from the date of the official promulgation of the result of the election.

No question but that a petition should have been addressed to the contestee asking him to recuse himself, and appoint a judge ad hoc. This was not done, although the judge was in the parish in which the suit was brought, and in which he is domiciled. After the two days had elapsed, a petition was presented to him. He recused himself, and a judge ad hoc was appointed to try the case. This judge issued the order required by Act No. 198, section 6, of 1912.

The contestee was in no way at fault. The contestant had it within his power within the two days after the promulgation to apply for and obtain a proper order. In this he failed. The judge ad hoc decided that no legal order had been given; the clerk having signed such an order while the judge of the district was present in the parish. He overruled the exception, and signed a proper order, which was duly served, over a week after the required time, as before stated.

We hold that the exception of prescription was properly overruled.

[2] We pass to the next objection which is that the reconventional demand of defendant was not filed within the two days. Plaintiff specially invokes the statute in question; that is, No. 198 of 1912. Although he took the position that the contest was filed in time, he now takes the contrary position that the reconventional demand was not filed in time. It does not appear that there was considerable difference on part of plaintiff between the two positions. We will state one pleading in reconvention should have the right to be heard to prove facts necessary to his defense. "The term of forfeiture," words used in several decisions in regard to this prescription, should not bar a reconventional

131 La.—16

demand in defense or necessary to the maintenance of a defense. Plaintiff would scarcely have time to present his reconventional demand within the two days allowed to institute this suit. Plaintiff could not well institute a suit without knowing whether the action of the judicial executive committee would be questioned by contestant.

[3] The next proposition argued by defendant is that the Act of 1912 relative to primary elections, does not in its title express its object. Such a ruling, if possible in law, would be a very happy solution. It would in great part put an end to the jurisdiction of courts in matter of elections. The jurisdiction in political cases is not very desirable in any way so far as we have been able to discover. The courts have ample to do without that jurisdiction; but it is too late in the day to set it aside for unconstitutionality.

It was conceded by defendant in argument that the court has heretofore declared that Act 138 of 1912 was not unconstitutional. In State v. Michel, 121 La. 374, 46 South. 430, its constitutionality was sustained.

That decision speaks for itself, and is here cited as a precedent.

The statute is not illegal on the ground urged. The title is sufficiently broad to cover the object of the statute. The right of appeal to the courts is favored. The whole statute shows that it was the intention to confer jurisdiction. The main purpose of a title is to avoid the mixing in one act things that have no proper relation to each other. Jurisdiction of the courts here is not an independent subject.

[6] The title need not mention "the means, method or instrument" by which it is intended to accomplish a general purpose. The modus operandi may not be indicated or stated.

If the title does not mislead, or if it be not such as to take one by surprise, it may be good, although it may not be as ample as it might be.

## On the Merits.

The names of places, creeks, and stores at which precinct elections were held have become familiar.

Plaintiff, Thornhill, received yellow or sample ballots in the following boxes: Olla, 14 votes; Tullus, 24 votes; Nickle, 42, all in La Salle parish; Clark's, 1; ward 6, 12, all in Caldwell—a total of 93. And plaintiff charges the defendant with having received 66 votes at Olla, 6 at Tullus, 4 at Nickle, and at ward 6, 23, a total of 99 votes. The contention of plaintiff is that, if none of the yellow ballots are legal, a majority of 4 in favor of defendant will be changed to a majority of 2 in his favor.

The ballots cast at Grayson's Creek, in the parish of La Salle, were written, instead of printed. Here it is said that plaintiff received only 8 votes, while defendant received 18. If these ballots are not to be counted, 10 votes will have to be deducted from the votes credited to defendant. (Ten votes to be deducted.) Plaintiff avers that at Taver's store, in ward 1 of La Salle, the commissioners improperly permitted 5 persons, nonresidents, to vote—J. R. Norma, W. M. Norman, H. C. Green, J. H. Franklin, J. W. Turner, all of whom voted for contestee, Wear. (Five votes to be deducted.) At Olla he received 6 votes to contestant's 14, yellow or sample ballots; at any rate, not official ballots. (Fifty-two votes to be deducted.) At Doyle's Branch, another voting place, the commissioners returned 4 votes for contestant and 4 for contestee. Contestant was entitled to 6 votes. He asked to have the box opened and the votes recounted. (Number of votes to be deducted, two.)

Another complaint of contestant is: That he received one vote which was on a stamped ballot that was stamped also for two

school board candidates, and on that ballot only one candidate should have been voted for. Plaintiff claims this vote. (One vote to be added.) That at Sardis all the votes were yellow or sample ballots. That, as a result, upon a recount, it would appear that plaintiff had a majority of good votes of 77 votes.

The contention of contestee, Wear, is that the written ballots were valid, and that the box at Grayson's Creek was properly counted and returned; that, as the commissioners were not furnished with official ballots, they had a right to hold the election at that place, and receive the written ballots; that the voters are not in the least to blame, and should not be deprived of their right to vote. Contestee claims the five votes before named; that is, those of Norman and others. He also claims that the sample votes cast were properly counted at all the precincts. He claims the votes at Olla, at Sardis, in ward 6 of the parish of Caldwell, and avers that plaintiff is not entitled to any votes other than those counted at Doyle's Branch.

Contestee Wear's contention, after stating some further details, is that he received a larger number of the votes than those counted for him and the contestant considerably less.

In his reconventional demand, contestee complains of the action of the commissioners in counting 23 votes for contestant at Taver's and 27 votes at Tullus; at Nickle, 42 votes, all in La Salle; at Summerville, 33 votes; at Peters Church, ward 2, 16 votes; at Kelley's, same parish, 39 votes; at Grayson's, 25; at Clark's 52 votes; at Vixen, ward 5, 23 votes; at Fredericksburg, ward 7, 10 votes; at Brown's sawmill, 22 votes; at Union Church, 37 votes; and at Shiloh Church, 37 votes, all in Caldwell parish. A sweeping averment is made by contestee against these votes. The grounds are that

the voters were nonresidents, minors, and had failed to register and neglected to pay their poll tax; also, that their ballots were irregular and illegal and marked. In addition, reconvenor complains of the throwing out of 4 votes at Jena, spoiled votes.

The regularity of the election at Little Creek is assailed on the ground that there were no election booths, no secrecy was observed in marking ballots, and other asserted irregularities. The attack on the voting at Tullus is renewed, also at Summerville on similar grounds; that the first four ballots cast at Tullus were yellow or sample ballots, and other ballots were voted without detaching the numbers.

Contestee also claims the right to the votes of Andrew Franklin and Jackson Francis, his supporters who were illegally denied the right to vote.

[7] At the time during the trial that defendant offered evidence to prove his reconventional demand, plaintiff objected on the ground that defendant's allegations were not sufficiently ample to admit of proof; that these allegations were vague and indefinite, and not sufficiently specific to put plaintiff on his guard.

The objection was overruled, and a bill reserved. In our opinion, the objection should have been sustained in part at least; that is, in all respects save as relates to marked ballots. In a contest for office, the pleader should allege with some particularity all of his grounds, whether he is originally plaintiff, or subsequently plaintiff in reconvention. Burton v. Hicks, 27 La. Ann. 515.

[8, 9] The averment, as above, that the commissioners of election at Taver's ward 1, counted as voting for the candidate, and the other allegations which follow sufficiently show the number of votes cast; but it should have been alleged by whom they were cast and the reason as applying to each voter that this ballot was not legal. There should

have been greater detail in the allegations, as the facts, if they are well grounded, are surely obtainable. If, for instance, one is a nonresident, or a minor, or other similar cause, it should be alleged. It is different as to the ballots that were cast without detaching the slips. They were in the box, and ordinarily the information is not within reach of the pleader, and in that instance a general reference was sufficient. The allegation as made in this respect, under the circumstances, was susceptible of proof. From that point of view there is no question but that an allegation to the marked or attached ballot, giving the number and general reference to the fact, was sufficient.

There was no objection and no ground of objection to the allegation setting forth the number of yellow tickets cast, nor to the allegation regarding written ballots.

All of these will have to be deducted, the yellow or sample ballots, the written ballots, and the marked tickets. The following shows the number to be deducted, if figures are correct. (We give totals. The numbers forming the totals are of record):

The Thornhill yellow ballots.............. 93
The Wear yellow ballots................ 99
Official ballots voted with numbers thereon
For Thornhill ......................161
For Wear ............................ 83
The written ballots
For Thornhill .......................... 8
For Wear............................ 18

The foregoing is from the brief of one of learned counsel. We do not vouch for their absolute accuracy. The figures are only quoted as part of the narrative of the case.

These ballots are to be deducted and the result ascertained by subtracting them from the totals found, after deducting such ballots as may be found illegal.

[4] Our reasons for decreeing that these ballots be deducted are that, as relates to the ballots, the statute is mandatory. The ballots, the Statute of 1912 declares, shall be furnished by the Secretary of State, and these ballots "shall be printed upon white paper; each ballot shall contain a detachable slip," which shall be handed to the voter. The word "shall" plays a certain part. It was inserted in nearly every sentence. The number of times it was used could not have been greater under any circumstance; but, in addition, the act provides that any ballot not in accordance herewith, referring to all the ballots before referred to, "shall be void for all purposes, and shall not be received or deposited or counted by any person or commissioner at any such primary election." Any ballot includes all the illegal ballots before mentioned.

Again, in another part of the statute, it is provided that "sample ballots shall not be counted."

See section 3 of Act No. 198 of 1912.

This court has decided that a ballot stamped on the left side is invalid, thus giving expression to the mandatory features of the statute. Hendry v. Democratic Executive Committee, 128 La. 465, 54 South. 943.

The legislative intention is controlling where clearly expressed. Opinion regarding the policy or wisdom of the statute is not to be considered. The purpose was to enjoin secrecy, to elevate to some extent the electorate by requiring the respective voters to act upon their own judgment. To what extent that was accomplished is not an issue in deciding a judicial question.

To sum, as relates to the main issue of this trial:

Mandatory ballots must be printed is the only conclusion to be reached, unless language is disregarded. Mize v. McElroy, 44 La. Ann. 796, 11 South. 133, 16 L. R. A. 278, 32 Am. St. Rep. 355.

Learned counsel for defendant express the view that the act goes beyond the judicial limitations, but have not sustained that view by reference to the applying limitation. We find decisions to the contrary.

"The voter should comply with the legislative will." State ex rel. Mize v. McElroy, 44 La. Ann. 799, 11 South. 133, 16 L. R. A. 278, 32 Am. St. Rep. 355, and cases.

An official ballot is required. When the law so requires, the official ballot should be used. State ex rel. v. Anderson, 100 Wis. 523, 76 N. W. 482, 42 L. R. A. 239; Cole v. Tucker, 164 Mass. 486, 41 N. E. 681, 29 L. R. A. 668; Common Council of Detroit v. Rush, 82 Mich. 532, 46 N. W. 951, 10 L. R. A. 171.

There are issues less general than those heretofore considered, as will be seen by the following:

W. H. Norman, L. C. Cruse, J. H. Franklin, and J. W. Turner lived in the portion of the parish described in Ordinance 128. They prior to the ordinance resided in ward 1 of La Salle. They have not changed residence. The police jury by this ordinance located them in another precinct. This change was not made by the local authorities six months prior to the election. They, in consequence, retained the right to vote in the precinct before the change.

They a month before the election, on special application of the registrar, obtained leave from the registrar to change their registration. In this permission, according to the effect of the admission made by counsel, they must have been registered, otherwise there would have been no registry to change.

The two Normans, Cruse, and Franklin had paid their poll taxes, and so had Turner, according to the weight of the testimony.

[5] The remaining questions relating to spoiled ballots and to other voters passed upon by the district court were correctly decided. The case is remanded because the contestant was not allowed in the district court to have boxes opened, and thereby prove the state of facts in regard to the number of ballots, in regard to sample or yellow ballots or white ballots with slips attached. It is even handed justice to give opportunity to parties to open the contested boxes in the district court and count all marked or undetached ballots, deduct them as before stated, and pronounce judgment upon the result of the election.

It is therefore ordered, adjudged, and decreed that the case be remanded to the district court to be proceeded with in accordance with the views before expressed after hearing that judgment be rendered; costs to abide final result of the suit.