## No. 11,345

### Orleans

### NOLAN v. MARTIN

(March 12, 1928. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Elections by the People—Par. 19.**

Slight pencil dots or marks upon the back of ballots, or an irregular cross opposite the names of candidates, not calculated to serve as identification, are not sufficient to invalidate a ballot.

Appeal from the Twenty-fifth Judicial District Court, Parish of Plaquemines. Hon. J. C. Meraux, Judge.

Action by Thomas Nolan against Emile Martin, Jr.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

L. H. Perez, of New Orleans, attorney for plaintiff, appellee.

O. S. Livaudais, of New Orleans, attorney for defendant appellant.

CLAIBORNE, J. This case presents a contest for the office of Police Juror for Ward Eight of the Parish of Plaquemines.

Plaintiff alleged that at the primary election held on January 17, 1928, he received a majority of the legal votes cast, and was elected Democratic nominee for the office of Police Juror for Ward Eight of the Parish of Plaquemines, but the Plaquemines Parish Democratic Committee promulgated the returns of said election and illegally declared that Emile Martin, Jr., had received a majority of the votes cast at said election and was the Democratic nominee for the office of Police Juror aforesaid; that said Committee declared that the plaintiff herein had received only fifteen votes while Martin had received twenty-one votes.

Plaintiff further alleged that there were several illegal votes counted for said Martin in the manner following:

1st. That Mr. and Mrs. Willie Falgout, and Oliver Rodriguez did not possess any legal poll taxes for the year 1926; that nevertheless they were allowed to vote and their votes were cast and counted for Martin, and should be declared null and deducted from the number of votes credited to him.

2nd. That Henry Treadway allowed Mrs. McCurdy to view his ballot and to assist him in marking it although he possessed the necessary educational qualifications to mark his own ballot; and that Treadway also voted for Martin and that his vote should also be deducted.

3rd. That seven more ballots bore clear marks of identification such as erasures, marks outside of the squares provided for the marking of ballots, and other particular marks of identification on ballots cast for Martin for the specific purpose of having said ballots identified by the parties casting said notes; that said ballots were counted for said Martin and should also be deducted; that therefore said thirteen illegal votes should be deducted from the total credited to him, leaving him with only eight legal votes thus giving plaintiff a majority of seven votes entitling him to the nomination.

Plaintiff prayed for judgment declaring him the nominee for Police Juror of the Eighth Ward of the Parish of Plaquemines.

Defendant filed exceptions which he afterwards withdraw.

For answer defendant admitted that the Committee declared him to have received the majority of votes cast on the election of January 17, 1928, and as such to be the nominee for election to the office of Police Juror for Ward Eight of the Parish, and denied all the other allegations of the petition, and prayed that plaintiff's suit be dismissed.

There was judgment in favor of plaintiff for the following reasons:

1st. That Mr. and Mrs. Willie Falgout voted without the poll tax of 1926 and that both votes were for Emile Martin, Jr., defendant, and both should be deducted.

2nd. That Treadway exhibited his ballot when he was making the same, in violation of Section 20 of Act 97 of 1922; and that Treadway was not affiliated with any party as required by Section 21 of

Act 122 of 1921 and he voted for defendant and his vote should be deducted.

3rd. The seven ballots cast for defendant marked 1, 2, 3, 4, 8, 9, 10, are invalid and also ballot No. 7 cast for plaintiff, leaving plaintiff 14 votes for the following reasons:

Ballot 1 has a cross mark on the back of the ticket below the words "Secretary of State"; ballot 3 has what appears to be letter C in lead pencil through the cross mark opposite the name Kirby; the four ballots 2, 4, 8, 9, 10, have artistic marks made through the cross marks, such as decoration on the end of the crosses, additional lines through the cross marks, and in the case of plaintiff 4 what appears to be double checks opposite the names of Gravolet, all of which seven ballots should be deducted from defendant's votes.

Plaintiff's ballot 7 also has artistic crosses for which it should also be deducted from plaintiff (but we are not concerned with that ballot as plaintiff has neither appealed nor joined in defendant's appeal).

The Judge continues:

Ten votes deducted from defendant's 21 leaves him 11 votes. One vote deducted from plaintiff's 15 leaves him 14, or a majority of four in favor of plaintiff.

This is evidently a clerical error, as 11 from 14 leaves 3, or a majority of 3 in favor of plaintiff, who was declared the nominee.

From this judgment the defendant alone has appealed.

The view we have taken of the third ground of plaintiff's petition renders it unnecessary for us to pass upon his objections to the votes of Mr. and Mrs. Willie Falgout and Henry Q. Treadway.

We may, however, say that his views on the latter's right to vote are not supported by the opinion in 156 La. 345:

Section 26 of Act 97 of 1922, p. 195, reads as follows:

"On receiving his ballot the voter shall forthwith and without leaving the enclosed space, retire to the place provided for the preparation of his ballot and designate his choice by making a cross with a lead pencil in the voting space to the right of and opposite the name of the candidate he desires the support for the particular office for which they have offered."

Nothing in the law indicates how that cross shall be made, whether the lines shall run diagonally, horizontally, or perpendicularly, nor of what style the cross shall be, plain or artistic, the St. Andrew's cross, generally used by illiterate persons in making their mark, the Latin cross, or St. George's cross. Crosses are made in various forms. As the law has not designated the kind of cross the voter shall make, it seems that he could use any one to his taste.

This Court is, however, controlled by the interpretation put upon the statutes by our Supreme Court.

In the case of Vidrine vs. Eldred, 153 La. 784, 96 So. 566, the Court rejected 31 ballots and said:

"Some of these votes (ballots) were signed by the voter. Some of them contained other marks than the cross mark in the square opposite the names of candidates, as for instance, the names of candidates written, or additional cross marks or checks or lines outside of the square; some contained visible erasures."

In Perz vs. Cognevich, 156 La. 331, 100 So. 44, the Court found a ballot "with two dots on it appearing immediately under names of two candidates," another

with three dots on it, and a third with four or five pencil dots on it scarcely perceptible and such as "would hardly serve as marks of identification," a fourth "with irregular cross marks in the voting squares opposite the names of the candidates," "when the ballot is turned sideways the irregular cross marks resemble inverted fours * * * . The law requires the voter to indicate for which of the can-he desires to cast his ballot by making a cross mark in the square opposite the names of such candidates, but it does not require that the cross mark be a perfect one."

This reasoning applies to all voters, but more especially to voters in cities in the humbler spheres of life, in occupations that cause calloused hands and stiffen and harden the fingers, and in the country to tillers of the soil, from whom perfection in the use of pencils and in tracing the lines · of a cross cannot reasonably be expected. The right to vote and to have one's vote counted · is the constitutional right of an American citizen which cannot be denied him by unreasonable legislative requirements or trivial judicial additions to the law.

Such laws should receive a liberal construction.

We have examined with care the ten ballots condemned by the learned trial judge, and have read with attention his reasons for judgment and the brief of the appellee's learned counsel. They fail to convince us. They are not in line with the decisions of the Supreme Court quoted above, but, if adopted, would rather defeat than execute the will of the voters.

The five members of the Democratic Committee returned the defendant as elected and we agree with them.

By reversing the judgment as to the seven votes for errors in making the crosses the admitted vote stands 17 in favor of the defendant and 14 only in favor of the plaintiff, giving a majority to the defendant.

It is therefore ordered that the judgment herein be reversed and set aside and plaintiff's demand be rejected.