OWENS v. WOODS

(March 27, 1928. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Elections by the People—Par. 49, 64, 83.**

After a critical examination of the ballots and elimination of spoiled ballots for reasons to be hereafter committed to writing, we have come to the conclusion that the defendant and appellee still has a majority over the plaintiff and appellant.

2. **Louisiana Digest—Elections by the People—Par. 49, 63, 64.**

In disputed election cases light pencil marks, or slightly irregular crosses or faint erasures on ballots not calculated to serve as marks of identification will not invalidate ballots.

Appeal from Civil District Court, Div. "E." Hon. Wm. H. Byrnes, Judge.

Action by Frank J. Owens against Charles J. Woods.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

J. T. Prowell, John C. Davey, of New Orleans, attorneys for plaintiff, appellant.

Rene Viosca, F. C. Querens, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. Plaintiff and defendant were candidates for the House of Representatives from the Second Ward, Parish of Orleans, at the second Democratic primary held on February 28, 1928.

The official returns, as promulgated by the Orleans Parish Democratic Executive Committee gave plaintiff nine hundred fifty-nine (959) votes and defendant nine hundred sixty-five (965) votes.

The Parish Committee declared defendant the nominee for the office by a majority of six (6) votes. Plaintiff thereupon filed this suit against defendant and the Orleans Parish Democratic Executive Committee to have the action of Parish Committee set aside and be declared the nominee.

The material allegations of his petition are substantially as follows:

(1) That the true and correct returns will show that he received over one thousand (1,000) votes and defendant less than nine hundred (900).

(2) In Precinct 2, although poll list shows two hundred thirteen (213) electors voted, tally sheet shows only two hundred seven (207) ballots were counted, with no notation of spoiled ballots; these six

(6) votes were cast for him, and the commissioners counted ballots illegally cast in favor of defendant.

(3) In Precinct 6, all commissioners did not sign tally sheet or poll list and though poll list shows one hundred sixteen (116) electors voted, tally sheet shows only one hundred thirteen (113) ballots were counted; these three (3) ballots were cast for him and commissioners counted illegal ballots for defendant.

(4) In Precinct 7, there was a discrepancy of five (5) votes between the poll list and tally sheet, which five (5) votes were cast for him, illegal votes were cast for defendant and persons were allowed to vote in this precinct who were not entitled to vote.

(5) In Precinct 8, there was again a discrepancy of five (5) votes between the poll list and tally, which five (5) votes were cast for him, and again illegal votes were cast for defendant.

(6) In Precinct 9, there was again a discrepancy between the poll list and tally sheet of five (5) votes, which five (5) votes were cast for him, ballots were given out in rotation in direct violation of law, "endless chain" was worked, number of ballots were changed after they were put down on poll list and no record was kept on poll list of the number of poll tax receipts or registration certificates as requested by law, election was held illegally and whole box should be rejected.

(7) In Precinct 10, there was ·again a discrepancy between poll list and tally sheet of six (6) votes, which six (6) votes were cast for him; all commissioners did not sign poll list and tally sheets and they did not keep numbers of poll tax receipts and registration certificates; ballots were given out in rotation and commis-

sioners allowed deputy sheriff and others without right to enter the room where election was held and interfere with the voting; commissioners allowed eight (8) persons (whose names are given) to vote, who had no right to vote; that Edward Burke, supposed to be deputy sheriff, assumed charge of the polls, bullied commissioners and intimidated the voters; that election was entirely illegal and all the votes should be rejected; that commissioners did not count the ballots and did not keep poll list as required by law; they permitted Deputy Sheriff Burkes to handle all the ballots when poll closed and made up tally sheets in advance of opening ballot box.

(8) That it is necessary for court to order boxes in Precincts 2, 6, 7 and 8 opened and votes recounted on account of aforesaid fraud; that the ballots in Precincts 9 and 10 should be entirely rejected, because all laws pertaining to elections were therein violated and he should be declared nominee.

To this petition defendant filed exceptions of misjoinder, non-joinder and no right or cause of action, annexing certified official returns from all ten (10) precincts in the ward and also certified copies of official returns of first primary held January 17, 1928. At same time defendant answered denying charges of fraud and irregularity on the part of defendant and declaring that defendant actually received more votes than plaintiff and in the alternative and only for further answer by way of reconventional demand defendant averred that a certain lady by name of Mrs. 'Claude Simons had voted illegally for plaintiff without proper poll tax for 1926 and her vote should be deducted. That numerous spoiled ballots were counted for plaintiff, ballots which were identified ballots marked ·with other than a

cross mark as required by law, ballots in which cross mark was not placed in space fixed by law, ballots marked in ink and blue pencil, ballots with numbers attached and other illegal ballots, all of which amounted to fifteen (15) votes in each of Precincts 1, 3 and 4 of Ward 2, while similar ballots in favor of defendant were not counted.

Defendant further averred that if it should become necessary, because of any possible change in results, then the ballots in Precincts 1, 3 and 4 should be recounted and all legal ballots in favor of defendant counted for him and all illegal ballots in favor of plaintiff rejected; that plaintiff was illegally given one hundred fifty (150) votes in Precinct 4 when the tally sheet shows he received only one hundred forty-five (145), which five (5) votes should be rejected.

Defendant then prayed that suit be dismissed; that the official count be upheld, or if, in the alternative, it should be necessary then the ballots in Precincts 1, 3 and 4 be counted.

The Orleans Parish Committee answered that it had no interest in the matter and attached to its answer certified copy of all its minute entries relative to this contest.

The trial Judge maintained the exception of misjoinder and dismissed the suit as to Parish Committee. Though he stated that he realized the question was close, he overruled exception of no cause of action and declined to throw out boxes nine and ten on the ground that charges of fraud were too vague. He then appointed on recommendation of opposing attorney, commissioners to count the ballots in boxes two, six, seven, eight, nine and ten. After deducting five (5) ballots from plaintiff in Precinct 4 on the ground

that the tally sheet from that precinct sent to the Parish Committee showed only one hundred forty-five (145) votes, and passing on seventy-four (74) disputed ballots, he gave judgment for defendant declaring that he had nine hundred forty-five (945) votes and plaintiff nine hundred thirty-five (935).

In reaching this conclusion, trial Judge credited Woods with twenty-three (23) of the disputed ballots and Owens with nineteen (19). He rejected as illegal twenty-seven (27) votes which had been given to Woods and ten (10) which had been given to Owens.

From that judgment plaintiff has appealed.

In this Court defendant urges emphatically his exception of no cause of action and cites many decisions of the appellate courts to the effect that general allegations as to fraud and illegality in elections do not suffice in petitions of this sort, but specific details should be set forth.

While we recognize with the trial Judge that the question is a close one and the margin narrow, because the specifications of illegality are not set forth in detail, we think that these defects were properly subject more to an exception of vagueness than to one of no cause of action and that taken as a whole the petition did allege a cause of action. This conclusion is based on the fact that the rights of defendant were substantially protected by the trial Judge in his rulings as to admissibility of evidence tendered by plaintiff and the right to amend where no cause of action is based on insufficiency of allegation has been liberally extended in recent cases.

See James vs. New Orleans, 151 La. 480, 91 So. 846; Southern Equipment Co.

vs. Cardwell Stove Co., 154 La. 109, 97 So. 332; Stone vs. Crescent Encampment Co., Orleans App. Digest, 131.

Although plaintiff's brief states that seventy-nine (79) ballots were protested before the trial Judge of which fifty (50) were cast for defendant and twenty-nine (29) for plaintiff, we find in the record seventy-three (73) ballots which added to the five (5) in contest from Precinct 4 make a total of seventy-eight (78).

In passing on the legality of the seventy-three (73) disputed ballots, we have been guided by the decision of the Supreme Court in the case of Perez vs. Cognevich, 156 La. 331, 100 So. 444, and by that of this Court in the recent case of Nolan vs. Martin, decided on March ___, 1928, not yet reported.

In the Perez case the Supreme Court held as follows:

(1) Ballot with pencil dot slightly below and to the left of one of the squares was not invalid as marked for identification.

(2) Irregular cross marks on ballot did not invalidate it, as cross mark was not required to be perfect.

(3) Erasures on ballot, which might serve as identification marks did invalidate it.

Of the fifteen (15) disputed ballots from the Second Precinct, we found that eight of those cast for Owens were good and three (3) bad, that two (2) of those cast for Woods were good and two (2) bad.

Of the forty-one (41) disputed votes from the Seventh Precinct, we found eight (8) of those cast for Owens good and two (2) bad, twenty-seven (27) of those cast for Woods good and four (4) bad. Most of these ballots had been disputed, because they showed more or less plainly that the cross mark had been erased in the square, but we did not consider these erasures sufficiently plain to serve as identification marks, particularly where one box contained so many similar erasures.

In Precinct 8, of the three (3) disputed ballots, we found two (2) cast for Owens good and one (1) cast for Woods bad.

In Precinct 9, of the four (4) disputed votes we found three (3) cast for Owens good and one (1) for Woods good.

In Precinct 10, of the ten (10) disputed votes, we found three (3) cast for Owens good, four (4) cast for Woods good and three (3) bad.

To sum up, excluding the fifteen (15) illegal ballots, we credit Woods with thirty-four (34) of the disputed ballots and Owens with twenty-four (24), thereby giving Woods eleven (11) more ballots and Owens only five (5) more than the trial Judge and increasing his majority to sixteen.

As Woods would still have a majority, even if we gave Owens the five (5) votes from Precinct 4, we do not find it necessary to decide the question as to whether the actual number of strokes on the tally sheet should control or the total figure as written out by the Commissioners.

For above reasons the judgment is affirmed.