## HEBERT v. LANDRY et al.

### No. 2093.

Court of Appeal of Louisiana. First Circuit.

Jan. 31, 1940.

Pugh & Lanier and John F. Pugh, all of Thibodaux, for appellant.

Numa .F. Montet, Hubert A. Lafargue, and Carroll Montet, all of Thibodaux, for appellees.

OTT, Judge.

This is a suit involving a contest over an election for member of the Police Jury of the Parish of Assumption from Ward Five of said parish at the primary election which was held throughout the State of Louisiana on January 16, 1940. There were two candidates, Junior P. Hebert, the contestant, appellant herein, and Teles X. Landry, contestee, appellee.

On the result of the voting in the three polling precincts of the said ward as announced by the commissioners of election at each of the said polls, there was a tie vote. The contestant, however, claims that in Precinct One of the ward there was a..

vote illegally counted by the commissioners of election at that poll in favor of his opponent, Teles X. Landry, and that had that illegal vote been marked a spoiled ballot, as it should have been, the result would then have been a majority of one, out of all the votes cast in that ward, in his favor, and he would have been nominated for the office to which he aspired and for which he was a candidate at the election. He therefore seeks to have the Assumption Parish Democratic Executive Committee, which is charged with promulgating the returns of the election, enjoined and restrained from doing so in so far as said office of police juror of Ward Five is concerned, and to obtain judgment in the District Court decreeing the ballot which he attacked to be a spoiled ballot, and ordering the Parish Democratic Executive Committee to correctly promulgate the returns of the election. He also makes the Clerk of Court of Assumption Parish, in whose custody the ballot box is, a party defendant, to the end that the said box may not be tampered with.

In his petition, the contestant sets out that the ballot is illegal for the reason that the voter marked the same in his favor and then smeared or partially erased that mark and also marked it in favor of his opponent, Teles X. Landry.

He charges that the marking of the ballot in such manner clearly shows an intention to either vote for him or to make it such a ballot as could later be identified. He also alleges that under the primary election law as interpreted by the jurisprudence of this state, a ballot so marked is an illegal and spoiled ballot and should have been so marked, and not counted for either candidate by the commissioners.

In his answer, the defendant, contestee, virtually admits the facts as they are set out in the plaintiff's petition, denying, however, that the ballot was spoiled and that it was illegally counted, and denying also that under the jurisprudence of this state a ballot so marked is illegal and a spoiled ballot. The defendant insists that the ballot is a legal and valid ballot and that it was properly counted by the commissioners, with the result as herein stated.

It plainly appears, however, that the sole and only issue presented to the Court in this contest is the legality, vel non, of the ballot which has been attacked.

The trial court, after hearing, decided in favor of the defendants, dismissing plaintiff's suit and ordering the Assumption Parish Democratic Executive Committee to meet and declare the defendant, Teles X. Landry, and the plaintiff, Junior P. Hebert, to be opposing candidates in a second democratic primary election to be held in the Fifth Ward of Assumption Parish on February 20, 1940, for the office of police juror in and for said ward, and that the said committee certify the names of such candidates to the Secretary of State so that they may be placed upon the official ballots to be used in said election.

From that judgment the plaintiff prosecutes this appeal.

While the trial judge did not assign written reasons for judgment, it is apparent from the conclusion he reached that he was of the opinion that the attacked ballot was not an illegal ballot and that it was properly counted for the defendant Teles X. Landry.

The ballot in question was, under order of the court, withdrawn from the ballot box at the trial of the case in the district court and offered and produced in evidence and appears in the record as exhibit "P-1." It reveals an official primary election ballot to be used in the election in Assumption Parish, in Ward Five, in Precinct One, for the offices of Senator from the Twelfth Senatorial District, and for Sheriff of the Parish of Assumption, for clerk of court of that parish, for Police Juror of Ward Five, and for justice of the peace and constable. The voter marked his ballot regularly for a candidate for each of the said offices, and when he came to vote for the office of police juror of the ward, it is apparent that he made a cross mark, as required under the primary election law, in the square opposite the name of each of the two candidates, the parties in this contest, who were the only two candidates for that office. It appears that the cross mark in the square opposite the name of J. P. Hebert was erased. Whether the erasure was made before or after he had made the cross mark in the square opposite the name of T. X. Landry, it is impossible to tell.

The fact remains, however, that there is an erasure of the cross mark in the square opposite the name of J. P. Hebert, which erasure remains clearly visible, and the cross mark in the square opposite the name of T. X. Landry remains as it was placed there by the voter, and which is the same

kind of cross mark by which he indicated his choice of each candidate on the ballot.

The appellant relies on the two cases of Vidrine v. Eldred, 153 La. 779, 96 So. 566, and Perez v. Cognevich, 156 La. 331, 343, 100 So. 444, in support of his contention that the ballot in question in this case is a spoiled or illegal ballot and should not have been counted for the defendant.

There is no doubt that from expressions used by the court in these two cases the appellant might find considerable support for his contention, since in the first of these cases, particularly, the court might be understood as having rejected indiscriminately ballots which contained visible erasures, the nature of which, however, does not appear from a reading of the opinion. It is important to note that the court did describe the marks of identification on other rejected ballots, which marks were deemed sufficient to reject these other ballots as illegal. The same might be said of the opinion in the other case, wherein it is stated that there were several ballots found with erasures on them, which erasures were such as might reasonably serve the purpose of marks of identification. Yet we are again left without any description of the nature of those erasures, although the court in that case went to some length in describing the other marks of identification on other ballots.

It may be reasonably assumed that the erasures referred to in those cases were of such a nature as might have been placed there for the purpose of identifying the ballot and not for the purpose of correcting an honest mistake on the part of the voter such as is indicated in this case.

We think it is important in order to determine the purpose and intention of the voter to ascertain the nature as well as the extent of the erasures which might be capable of identifying a ballot.

▆▆ The law and the courts as well are no doubt ever zealous in guarding the secrecy of the ballot, and that is why a ballot which bears any distinguishing mark by which it may later be identified and thus lend encouragement to bribery and corruption in elections will be rejected. A distinction, however, has to be made between such a mark and one which, on the other hand, merely indicates the attempt of the voter to correct a mistake honestly made by him in marking his ballot, for again the courts and the law are equally as zealous in safeguarding and protecting the right of the voter to cast his ballot and to have it counted.

There is no provision in the primary election law of this state relating to what is or what is not a marked or spoiled ballot, and it is well, therefore, for us to refer to the general law on the subject. In Ruling Case Law, volume 9, page 1136, under the topic "Elections," it is stated:

"A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it, and to furnish means of evading the law as to secrecy. Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in a declaration of invalidity. If it appears from the face of the ballot that the marks or writings were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election and that the voter did not thereby pretend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is a choice expressed, in compliance with the requirements of the statutes."

This same general principle prevails in this state under our primary law, as is indicated by the expression of our Supreme Court in the case of Turregano v. Whittington, 132 La. 454, 61 So. 525, where it is said that not all distinguishing marks on a ballot will render such ballot illegal, where no intent is manifested on the part of the voter to distinguish his ballot from the other ballots cast.

▆▆ It is our own idea that the mark or erasure must be one that may be said to be personal to the particular individual who made it and placed on his ballot in accordance with an understanding made with some party who intended to destroy the secrecy of that ballot for the purpose of unduly influencing him in the election. The erasure on the ballot in this case is not such a mark, as what happened to the voter, who evidently made a mistake in the party he voted for and then corrected his mistake, is something which might well have happened to several other voters, and it would be impossible to tell from such erasure which was the particular ballot used by any one of them.

It is not claimed by the contestant in this case, nor does it anywhere appear that the erasure made on the ballot in question by the voter was made for any purpose other than to correct an honest mistake made on his part.

In our search for cases on this point outside of our own jurisdiction, we find the case of Slenker v. Engel, 250 Ill. 499, 95 N.E. 618, 622, which we think presented almost the exact situation as is presented in this case. We take the liberty of quoting from that case, as follows:

" 'Exhibit B,' being a ballot in Montgomery township, is objected to because of an attempt to erase a cross in the square opposite appellant's name. It is contended that this constitutes a distinguishing mark. All the candidates on the Republican ticket appear to have been voted for by marking crosses in the squares opposite their respective names. The voter then undertook to erase the cross in the square opposite appellant's name, and in so doing has distributed the blue color in a blur over the square. There is a distinct cross ·in the square opposite appellee's name. The reasons for the appearance of this ballot are perfectly apparent. It is simply a case of the voter changing his mind after marking his ballot for appellant, and then voting for appellee. The ballot was properly counted for appellee."

The appellant, in brief, calls our attention to a ·slight torn place on the bottom of this ballot and now urges this as an additional mark of identification on this ballot. We cannot consider this point, inasmuch as the question was not raised in the pleadings and has never been passed upon by the lower court, and we do not consider it now an issue in the case.

We take the liberty of referring now, as did the organ of the court in the case of Vidrine v. Eldred, supra, to the hardship imposed upon the Court in a case of this kind by the law itself, of studying and deciding a matter involving intricate legal propositions within twenty-four hours after submission. As suggested in that case, it is a task which requires almost superhuman effort and one which certainly can leave room for dissatisfaction, not only to the litigants, but to the Court itself, in that it is impossible to make a thorough study and research of the law. If we have not covered the field as fully as we should or expressed ourselves as clearly as we might have with more time at our command, it is

because the law limits us to the short period stated.

Finding no error in the judgment appealed from, the same is hereby affirmed, at the cost of the appellant.