58 So.2d 332

### STATE ex rel. HARRIS v. BREITHAUPT et al.

### No. 40738.

March 18, 1952.

Opinion March 21, 1952.

Dissenting Opinion April 7, 1952.

Shapiro & Shapiro, Alexandria, for plaintiff-appellant.

T. C. McLure, Jr., Alexandria, for appellees.

PONDER, Justice.

In compliance with the provisions of LSA–R.S. 18:364 requiring a decision in cases of this character within twenty-four hours after submission, we herewith hand down our decree in this matter, for the reasons which will follow in due course.

For the reasons to be hereinafter assigned, the judgment appealed from is reversed and set aside. It is ordered, adjudged and decreed that Sidney W. Harris, the plaintiff-appellant, is the Democratic nominee for the office of Police Juror for Ward One of Rapides Parish as a result of the Second Primary election held on February 19, 1952. All costs to be paid by the defendant-appellee.

MOISE, J., dissents.

LE BLANC, J., absent.

Opinion

PONDER, Justice.

The Democratic Executive Committee for the Parish of Rapides, after canvassing the returns of the Second Primary Election held on February 19, 1952 to select three police jurors for Ward One of Rapides Parish, declared the defendant, Breithaupt, Sidney M. Campbell and L. B. Gremillion, Jr., the Democratic nominees. The returns

of the election show that Sidney M. Campbell received 8083 votes; L. B. Gremillion, Jr., received 6500 votes; the defendant, Lewell E. Breithaupt, received 5833 votes; Sidney W. Harris received 5777 votes, the plaintiff Jimmie Normand received 5630 votes and Eugene Levy received 4968 votes. The plaintiff, Harris, brought this suit contesting the election. He alleges that a proper recount of the ballots contained in the ballot box of Precinct Five of Ward One would change the result of the election and show that he had received a greater number of votes than the defendant. A recount was granted. Upon completion of the recount, the trial judge gave judgment decreeing that the defendant had received 17 votes more than the plaintiff and rejected plaintiff's demand. The plaintiff has appealed.

The record does not reveal the number of precincts in Ward One or the number of votes received by the respective candidates in the precincts other than Precinct Five. The record does not disclose how many votes were received by these parties, in the election returns, in Precinct Five and the only way that we can determine the true situation is by taking into consideration the judgment of the trial court and the results of the recount. The trial judge did not hand down reasons for his judgment. His judgment is to the effect that 69 spoiled ballots were rejected and that the recount showed that the defendant had received 17 votes more than the plaintiff.

It appears that when the commissioners opened the box on the morning of the election, many of the ballots were soiled with ink. The box contained the paraphernalia required for the election, including four bottles of ink. The top on one of these bottles became loose and the ink seeped out and a great number of the ballots had ink splotches of various designs on them. When the commissioners opened the box and found the ballots in this condition, they, after some discussion as to the validity of the ballots, decided to use them. The evidence shows that no effort was made to obtain new ballots. It appears from the recount that 557 of the ballots had no ink on them and that the defendant received 413 of these votes and the plaintiff received 144 of these votes. Three hundred eighty-three (383) of the ballots contained ink spots on them. The trial judge rejected 69 of these ballots, as being spoiled, evidently because the ink marks appeared near or over the names of the candidates or in the voting squares. Three hundred and fourteen (314) of the ballots containing ink on them were permitted by the court to be counted, of which the defendant received 234 votes and the plaintiff received 80 votes.

The appellant-contestant contends that all of the ballots containing ink splotches should have been rejected and not counted because they were not legal ballots.

█ It is provided in our primary election law that primary elections shall be held and conducted under and in compliance

with this law. LSA–R.S. 18:284. The ballots used in such election must be uniform and printed in compliance with LSA–R.S. 18:316. It is provided in LSA–R.S. 18:320 that "Any ballots not in accordance with this Part are void for all purposes and shall not be received, deposited, or counted by any commissioner of the primary."

"In order to preserve secrecy in voting, statutes relating to the ballot go so far in many instances as to specify minutely the size, color of paper, the form of the ballot, and the precise manner in which it shall be printed. The laws are particularly stringent in forbidding the use of any device, endorsement, symbol, or other mark which would tend to distinguish one ballot from another in the hands of the voter. * *" 18 American Jurisprudence, Elections, Sect. 164, p. 288.

"A statutory provision that ballots not in a prescribed form shall not be counted is mandatory". 29 C.J.S., Elections § 173, par. 2, p. 249.

The rules laid down in the above quotations from the American Jurisprudence and Corpus Juris Secundum have been recognized by this court. While no case identical to the one here presented has been considered by this court, this court has refused to recognize ballots that did not comply with the provisions of LSA–R.S. 18:316 or statutes of similar nature. Hart v. Picou, 147 La 1017, 86 So. 479; Perez v. Cognevich, 156 La. 331, 100 So. 444; Thornhill v. Wear, 131 La. 479, 59 So. 909, 912. In

Thornhill v. Wear, supra, the commissioners used written ballots and in some precincts sample ballots when they were not furnished with the official ballots. All of the ballots were rejected and the court stated:

"* * * but, in addition, the act provides that any ballot not in accordance herewith, referring to all the ballots before referred to, 'shall be void for all purposes, and shall not be received or deposited or counted by any person or commissioner at any such primary election.' Any ballot includes all the illegal ballots before mentioned. * * *

"Opinion regarding the policy or wisdom of the statute is not to be considered. The purpose was to enjoin secrecy, to elevate to some extent the electorate by requiring the respective voters to act upon their own judgment. To what extent that was accomplished is not an issue in deciding a judicial question."

In Hart v. Picou, supra [147 La. 1017, 86 So. 480], the ballots were rejected and the election invalidated because of the failure of the ballots to have detachable slips as required by law. The court stated in that case:

"The purpose of these provisions is to make effective one of the main objects of the Primary Election Law, and that is that the voter shall be permitted to cast his ballot secretly, without the possibility of any one else knowing how he voted; the idea

being that, in these circumstances, he would come nearer voting his true convictions. Whereas if it were possible for any one else to know, or have a check upon how he voted, an improper influence might be thereby exercised upon his choice.       * * *

"Considering, therefore, the purpose of this provision of the law, we cannot see how it can be said that it was intended merely as directory, and that the failure to observe it must be accompanied by some proof of fraud or showing of injury to the party complaining.  Experience has taught that those who violate the law in such matters cannot be relied upon to confess it, and certainly could not be compelled to give evidence in any case which would have the effect of subjecting them to a criminal prosecution.  In our opinion it is not a question of the proof of fraud, but of the possibility of its being committed, that the lawmaker intended to guard against."

▆▆▆  In general elections ballots that are defaced or torn or marked otherwise than provided by law are treated as ballots marked for identification.    LSA–R.S. 18:732.  We refer to this section of the Revised Statutes because when it is taken into consideration with the provision in LSA–R.S. 18:320 that ballots not in accordance with the primary law, are void for all purposes and cannot be accepted, announces the public policy of this state regarding all elections, whether they be primary or general elections.  This court has entertained numerous contests involving ballots spoiled by the voter, some of which are Hendry v. Democratic Executive Committee, 128 La. 465, 54 So. 943; Vidrine v. Eldred, 153 La. 779, 69 So. 566; Bell v. Guenard, 194 La. 956, 195 So. 504; Courtney v. Abels, 205 La. 559, 17 So.2d 824.  From a reading of these cases it is apparent that the purpose of the primary law is that all ballots shall be alike and that the voter can prepare and cast his ballot in secret with no distinguishing mark on it.  It is pointed out in most of the cases that the law and the courts are zealous in guarding the secrecy of the ballots and that any ballot which bears any distinguishing mark by which it may later be identified cannot be accepted.  The rule is well laid down in Bell v. Guenard, supra, that, if there are such marks or erasures on the ballot as may reasonably serve as marks of identification, the ballot is spoiled and should be rejected.

The defendant has cited a number of authorities dealing with ballots which had been marked or injured by the voter or through error of the commissioners in counting the votes.  These authorities are not in point for the reason that the issue here presented is whether or not the ballots containing the ink splotches were legal ballots or such ballots as could be used in holding a primary election.

▆▆▆  We have arrived at the conclusion that the ballots containing the ink splotches are not, because of such ink spots, the type of ballot required by the statute and that they cannot be received or counted.  The

plaintiff has received 127 votes more than the defendant, after the rejection of the illegal ballots, and is therefore entitled to be declared the nominee.

Our decree has already been written and handed down declaring the plaintiff the nominee.

MOISE, J., dissents.

LE BLANC, J., absent.

MOISE, Justice (dissenting).

I am not attacking persons but opinions, not motives but reasons, not judges but decisions. Therefore, any appearance of criticism as distinguished from earnest presentment would be an error of the mind, not of the heart.

I cannot subscribe to the majority view—to the doctrine of total disfranchisement of these electors because of an accident—the spilling of ink on the official ballots, both the voters and the commissioners being free of fault. The rule adopted is as unholy as it is contrary to the natural law—that the lesser should not control the greater. The ink splotches were nonuniform, and an inspection of the ballots will show that there were no distinguishing marks placed thereon that would identify the voter. By judicial commity, we should bow to our own decisions bearing directly on the vital substance of the issue—the so-called distinguishing marks. In Turregano v. Whittington, 132 La. 455, 459, 61 So. 525, we said

that it must be a mark intending to identify the ballot, not the result of an accident.

Since neither the voter nor the commissioner placed the mark on the ballot—who wanted to identify whom?

"A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it and to furnish means of evading the law as to secrecy. * * *" American Jurisprudence, Vol. 18, at page 312.

Further, the uniform holding in Louisiana where the courts were called upon to consider the irregularities on the ballots was where the voter made the identifying marks. Jacobs v. Cutrer, 17 La.App. 383, 136 So. 119; Perez v. Cognevich, 156 La. 331, 100 So. 444; Crooks v. Chevallier, La. App., 156 So. 586; Hendry v. Democratic Executive Committee, 128 La. 465, 54 So. 943; Owens v. Woods, 8 La.App. 194; Nolan v. Martin, 8 La.App. 202; Brantley v. Smith, 6 La.App. 182; Courtney v. Abels, 205 La. 559, 17 So.2d 824; State ex rel. Bender v. Delery, La.App., 3 So.2d 204; Bell v. Guenard, 194 La. 956, 195 So. 504; Hebert v. Landry, La.App., 193 So. 406 and State ex rel. Mize v. McElroy, Returning Officer, 44 La.Ann. 796, 11 So. 133, 16 L.R. A. 278.

"A ballot is not, as a general rule vitiated by marks which were placed thereon accidentally, or without the knowledge or consent of the voter." McGrane v. Nez Perce

County, 18 Idaho 714, 112 P. 312, 32 L.R.A., N.S., 730; Am.Jur., Vol. 18, p. 316.

Here three hundred electors were disenfranchised of what we hold in this Democracy to be a God-given right. They were disenfranchised because of an undesigned designer or an uncaused cause—an accident in transit.

I, therefore, respectfully dissent.