**17 So.2d 824**

**COURTNEY v. ABELS.**

No. 37504.

April 3, 1944.

Ponder & Ponder, of Amite, for contest-.ant-appellant.

George M. Wallace, of Baton Rouge, and ·Tycer & Tucker and Joseph M. Blache, Jr., .all of Hammond, for defendant-appellee.

FOURNET, Justice.

This election contest between Fieldon D. ·Courtney, the contestant, and Charles (Bubbie) Abels, the contestee, for the ·democratic nomination for the office of as-.sessor of Livingston Parish, is before us for the second time in two weeks, the first .appeal having been taken by the contestant from the judgment of the lower court .maintaining his opponent's exceptions and

dismissing the contestant's suit. This judgment was overruled by us and the case remanded for a trial on the merits. Courtney v. Abels, La.Sup., 17 So.2d 337. The contestant is now appealing from the judgment of the lower court on the merits decreeing the contestee the democratic nominee for the office in contest by a majority of 5 votes.

When the case was originally remanded to the lower court, the defendant contestee filed an answer denying the contestant's right to a recount of the 7 boxes designated by him, and, further answering, asked for a recount of the remaining 16 boxes used in the election. This was opposed by the contestant on the ground that the contestee's answer had been filed more than 5 days after the service of the petition and order on him, in contravention of the specific requirements of the primary election law (Section 86 of Act No. 46 of 1940), but the trial judge, following the mandate of this court, proceeded to recount all of the ballots in the 7 boxes designated by the contestant after he had concluded from the evidence adduced at the trial that these boxes had not been tampered with. When a recount of these boxes resulted in a tie between the contestant and the contestee, the trial judge then proceeded to recount the remaining 16 boxes as requested by the contestee, but after a recount of only one of these 16 boxes disclosed the contestee, because of a number of spoiled ballots, had a majority of 5 votes, he (the contestee) withdrew his request that the other 15 boxes be recounted and asked for and received a return of the deposit of $20 made by him on each of these boxes. The

contestant then sought, by way of rebuttal, to have these 15 boxes recounted, but his request was denied by the trial judge, who immediately rendered judgment declaring the contestee the nominee by a majority of 5 votes. The contestant is appealing.

The contestant is objecting to the ruling of the trial judge counting as legal a number of ballots cast for the contestee that were objected to and challenged by the contestant as illegal. These ballots may be grouped into 4 categories: (1) Ballots with the numbered stubs or slips attached; (2) ballots marked other than with the "x" required by statute; (3) mutilated ballots such as those with torn corners, punched holes, crumpled or wadded, or containing parts of the numbered stubs or slips; and (4) ballots containing erasures or other marks of identification, such as dots on the face, perforations, fingerprints, grease marks, ink blots, or long and unusual "x's" extending beyond the square provided for such marks. The contestant also contends that the trial judge erroneously excluded certain ballots that had been cast for him: (1) One ballot cast by a soldier but sent by the clerk of court to the wrong precinct; (2) one ballot declared by the commissioners to be spoiled, as evidenced by the word "spoiled" written in ink across the back thereof; (3) a ballot showing that although the voter had correctly placed his "x" in the square opposite the contestant's name he had incorrectly placed his mark outside of the square opposite the candidate picked by him for police juror; and (4) six ballots that were either marked in ink or with a check instead of the required "x" in pencil. The contestant

is further contending (1) that the trial judge erred in allowing the contestee to have reopened the box in which the ballots for candidates for state offices were contained in an effort to locate 7 ballots that were, according to the official returns of the commissioners, missing from the box in which the ballots for the parish officials were contained after the recount was made in court; and (2) that the trial judge erred in allowing the 6 ballots found in the state box as a result of this search—4 in favor of the contestee and 2 in favor of the contestant—to be counted.

As was very aptly pointed out by the Court of Appeal for the First Circuit in the case of Hebert v. Landry, 193 So. 406, 408: "The law and the courts as well are no doubt ever zealous in guarding the secrecy of the ballot, and that is why a ballot which bears any distinguishing mark by which it may later be identified and thus lend encouragement to bribery and corruption in elections will be rejected. A distinction, however, has to be made between such a mark and one which, on the other hand, merely indicates the attempt of the voter to correct a mistake honestly made by him in marking his ballot, for again the courts and the law are equally as zealous in safeguarding and protecting the right of the voter to cast his ballot and to have it counted."

While the primary statute does specifically declare that a voter shall designate his choice of a candidate for each particular office by marking a cross with a pencil containing black lead in the voting square to the right of, and opposite, the

names of the candidates for whom he desires to vote, and that after marking his ballot he must have the numbered stub or slip removed by one of the commissioners before it is placed in the ballot box (Section 70 of Act No. 46 of 1940), as was also pointed out by the court in the Hebert case, "There is no provision in the primary election law of this state relating to what is or what is not a marked or spoiled ballot, and it is well, therefore, for us to refer to the general law on the subject. In Ruling Case Law, volume 9, page 1136, under the topic 'Elections,' it is stated:

" 'A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it, and to furnish means of evading the law as to secrecy. Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in a declaration of invalidity. If it appears from the face of the ballot that the marks or writing were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election and that the voter did not thereby pretend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is a choice expressed, in compliance with the requirements of the statutes.' " See, also, Turregano v. Whittington, 132 La. 454, 61 So. 525; and 29 C.J.S., Elections, p. 269, § 183 and those following.

While we have found that there are some expressions in our jurisprudence, particularly in those citations on behalf of the contestant, that seem to convey a contrary view, we think the above quotations express the more logical and sound view as well as the one most in keeping with the spirit of our democratic form of government that does not countenance anything conducive to the frustration of the right of the electorate to freely express their choice or selection of those persons into whose hands they desire the discharge of governmental functions to be placed. It was with this philosophy in mind that the entire court sitting at the hearing of this case reviewed and carefully scrutinized each of the ballots contested by the contestant, Courtney, and the result was our approval of each and every ruling of the trial judge with the following exceptions:

(1) The ballots marked P–29 and and P–31, each cast for the contestee, where the numbered stubs were not removed from the ballots, as specifically required by the statute. These have been declared to be spoiled ballots under our jurisprudence as well (Perez v. Cognevich, 156 La. 331, 100 So. 444) and should not have been allowed. (2) The ballot marked P–36, where the voter casting his vote for the contestee marked a "v" in the square instead of an "x," as he did for candidates for other offices on the ticket and as specifically required by the primary statute. This should have been rejected and not allowed. (3) The ballots marked P–12, P–14, D–6, D–E, and D–118. These ballots were not allowed for either party al-

though 3 of them should have been allowed for the contestee and 2 for the contestant. P–12 was properly marked with a lead pencil for the contestee although it appears that the voter in attempting to vote for the state senator started to use ink in making his "x" but discontinued this and proceeded to complete his mark with a pencil. While this rendered the ballot spoiled in so far as the office of senator was concerned, it was not spoiled as to the office of assessor. The same may be said of D–6, in favor of the contestee, and D–118, in favor of the contestant, both of which were properly marked as to the office in contest but improperly marked for some other office. An examination of P–14 reflects that the voter had first cast his vote for the contestant then had erased his mark and voted for the contestee. The ballot also shows other erasures. This ballot, like so many allowed by the trial judge, showed erasures. It is our view that there is no distinguishing feature in these erasures which might reasonably be assumed to have been intended by the voter as a marking of the ballot. The same is true of the ballot D–E, in favor of the contestant.

There was some disagreement among the members of the court hearing the case as to two of the ballots (the one cast for the contestant marked spoiled and the one cast for the contestant but not allowed because the clerk of court sent it to the wrong precinct). However, allowing both of these votes for the contestant, which is certainly the most favorable ruling he could receive, the result of the election remains unchanged for the reason that the contestee, who without

these two votes has a majority of 3 votes, would still have a majority of 1 vote.

Counsel for the contestant, however, seriously contended in the lower court and argued here that the court should have permitted a recount of the 15 boxes remaining uncounted when the contestee rested his case after a recount of the 16th of these boxes disclosed he had a majority of 5 votes. Counsel's argument first is that the contestee, having filed his answer more than five days after the service of the petition and order, was without right to have any of these 16 remaining boxes recounted, but that if they are wrong in this respect, then that the contestant should have been allowed to have the remaining 15 boxes brought into court upon the request of the contestee recounted and the results of such recount tendered as rebuttal evidence.

The first point raised has been decided adversely to the contestant's contention in the recent decision of this court in the case of Edwards v. Hester et al., 17 So.2d 820. We also think his second contention is without merit.

We fail to appreciate the import of contestant's contention that the evidence thus adduced could be used in rebuttal and. counsel for the contestant has not enlightened us in this respect. Since the contestee had the right to have any or all of the 16 remaining boxes recounted, he had the right to withdraw the deposit made by him for those he did not desire to have recounted. Consequently, conceding without deciding that the contestant had a right to have these 15 boxes recounted, he

not only had to make application for such recount, but he also had to make a deposit for each of the boxes he desired to have recounted. This he did not do. Of course the contestant was not entitled to have these boxes recounted at the expense of the contestee who necessarily was not interested in such a recount.

Having reached this conclusion, it is not necessary for us to pass on the contention of the contestee that the contestant should not have been permitted to recount the first 7 boxes because they had been tampered with.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.