PER CURIAM.
Inasmuch as this matter involves an ■election contest which the law requires us to decide within twenty-four hours after submission, we shall hand down our judgment thereon today and give written reasons therefor in a few days.
We have carefully examined the record .and briefs and listened to the oral arguments advanced in this matter and find that plaintiff has laid a proper foundation for a recount of the absentee ballots cast in this ■election and are of the opinion that the trial judge properly found that twenty-two of the ballots were “spoiled” and invalid.
It is therefore ordered, adjudged and decreed that the decision appealed from be, and the same is, hereby affirmed.
Affirmed.
WRITTEN REASONS
We handed down our judgment in this matter on April 26, 1966, in order to conform to LSA-R.S. 18:364, which requires a decision within twenty-four hours after submission. The following is our written reasons for said judgment.
This is a primary election contest in which there is at stake the Democratic nomination (usually the equivalent of election) for the office of Mayor of the City of Franklin, St. Mary Parish.
At the primary election held April 9, 1966, for said office, plaintiff Cusimano and defendant O’Niell were the candidates for the aforesaid nomination. The tabulated results disclosed a total of 1510 votes for defendant, O’Niell, to 1502 for plaintiff, Cusimano, whereupon the Democratic Executive Committee for the City of Franklin (sometimes hereafter referred to simply as “the Committee”) declared Mr. O’Niell the Democratic nominee by a majority of 8 votes.
Plaintiff Cusimano duly protested the committee action in conformity with LSA-R.S. 18:364, by asking for a recount on the basis of certain alleged irregularities which purportedly vitiated the election in its entirety and contended that illegal absentee votes were cast in favor of O’Niell in number sufficient to change the outcome of the election adverse to plaintiff. A number of irregularities were averred with regard to the voting at the polls on election day as well as with respect to the casting of absentee ballots. Defendant objected to plaintiff’s petition insofar as it sought to annul the election altogether. The Trial Court sustained defendant’s exception and rejected plaintiff’s demand insofar as it sought to have the election declared entirely null and void, which ruling counsel for plaintiff concedes to be correct. The Trial Court, however, ordered a recount of the absentee ballots cast in the election. Counsel for defendant O’Niell concedes plaintiff’s right to a recount subject to the laying of a proper foundation therefor pursuant to the terms of LSA-R.S. 18:364 hereinafter discussed.
After trial below, the judge of the lower court declared illegal 21 absentee ballots cast in favor of O’Niell and 1 for Cusimano. The Trial Court then deducted said void absentee ballots from the totals received by the respective candidates and declared Cusimano the party nominee by a vote of 1501 to 1489 for O’Niell and ordered the Committee to rescind its certification of O’Niell and certify and declare Cusimano as the Democratic nominee for the office in question. From said decision O’Niell has appealed.
In oral argument and briefs before this Court counsel for appellant makes three basic contentions:
(1) Plaintiff has failed to lay the foundation required by LSA-R.S. 18:364 as a condition precedent to a right for a recount by failing to produce satisfactory evidence that the absentee ballots have not been tampered with or disturbed subsequent to their having been counted by the Commissioners on election day;
(2) Appellee failed to protest the validity of any of the absentee ballots now *150 questioned in accordance with L.S.A.-R.S. 18:352, and
(3) Alternatively, that the Trial Court erred in declaring void the 21 ballots in appellant’s favor found to have been “spoiled.”
In contending that plaintiff has failed to lay the proper foundation by showing that the ballots herein contested were not tampered with subsequent to their being cast, counsel for appellant relies primarily on Hill v. Vernon Parish Executive Committee, La.App., 56 So.2d 868; Kling v. D’Armand, La.App., 56 So.2d 234; Constantin v. McNeely, La.App., 141 So.2d 684 and others. The law applicable in matters of this nature is set forth in Guillory v. Evangeline Parish Democratic Executive Committee, 220 La. 888, 57 So.2d 758 from which we quote with approval the following:
“The proof that the statute requires before any such recount may be obtained is satisfactory evidence that the box or the contents thereof have not been tampered with or disturbed after its closing by the commissioners, whereas under the general rule which prevailed prior thereto 'the proof required was evidence which would prove with reasonable certainty that they had not been tampered with since the election. We do not think there is any material difference between the degree of proof required by the statute and that required by the general rule recognized before its enactment. We do think that proof should be made that there has been no reasonable opportunity for the box or its contents to have been tampered with in order to comply with the statutory requirement of satisfactory evidence. The showing in this case was sufficient to comply with the statutory requirement of proof.”
In the case at bar, counsel for plaintiff called the Honorable Benny A. Blakeman, Clerk of Court, St. Mary Parish, who testified in detail regarding the manner in which the absentee ballots were kept and presented following the election. His testimony discloses that not only were the-ballots not tampered with or disturbed’ after the closing of the machines wherein the absentee ballots were placed by the-commissioners, but also there was present no reasonable opportunity for the absentee ballots to have been tampered with. Accordingly, we find, as did the Trial Court, the requirements of LSA-R.S. 18:364 as to* proof to be made before a recount can be ordered, have been met.
 From the foregoing we conclude-that plaintiff has discharged the burden encumbent upon him by virtue of LSA-R.S.. 18:364. As we understand the rule established by the Guillory case, supra, and other authorities dealing with the subject matter, the law does not require the party-demanding a recount to show the utter impossibility of the ballots having been tampered with but merely that there has been-no reasonable opportunity for the ballots-to have been altered and that such proof be made by competent evidence. The testimony of the Clerk of Court regarding the-keeping of the ballots subsequent to the election leaves little doubt that the ballots-in question have not been altered or tampered with in any manner whatsoever.
Next counsel for appellant maintains the-absentee votes voided by the Trial Court were improperly rejected because of plaintiff’s failure to protest the casting and' counting thereof. In support of this contention, counsel cites and relies upon Bradley v. Neill, 174 La. 702, 141 So. 382.
LSA-R.S. 18:352 provides that a protest shall have attached to it by the-commissioners a motion setting forth the-ground of protest, the name of the voter and the name of the challenger who may be-any qualified voter. We note that in the-Bradley case cited by counsel for appellant the votes contested were separated into 3 classes, one of which dealt with votes cast by electors who did not go to the polls in-person but had the ballot taken to them at *151 tlieir respective residences where the ballots were marked by the voter. The Supreme Court held that in the absence of a prior objection or protest, these ballots should have been counted. As we understand the protest procedure set forth in LSA-R.S. 18:352, its purpose is to provide a method by which an elector’s qualifications, or the manner in which he casts his vote, may be questioned or put at issue. The recount provision of LSA-R.S. 18:364 makes it clear that upon the proper allegation by a party desiring a recount, the counters shall proceed to count the ballots and shall count only ballots which prove to be valid and to have been cast in accordance with the laws governing the conduct of primary elections. Likewise Folse v. Lafourche Democratic Executive Committee, La.App., 160 So.2d 363, cited and relied upon by appellant is without application to the case .at bar. In the Folse case, supra, the issue was the alleged disqualification of certain absentee voters who were reputedly in -the parish on election day or who did not reside within the parish of Lafourche. We "held that the failure to protest the casting of these votes (there being no issue as to the form of the ballot) was fatal to the aright to have these ballots rejected.
We conclude therefore that plaintiff, 'having alleged facts sufficient to bring his case squarely within the provisions of LSA-R.S. 18:364, was entitled to have the 'Trial Court conduct said recount and to count only ballots valid in form and cast in compliance with the laws governing the laws of primary elections.
Considering now the votes rejected as “spoiled” by the Trial Court we state first ■the general rule of law applicable under the •circumstances:
It is settled jurisprudence that the law and the courts as well regard the se•crecy of the ballot as sacred and are most fervent in protecting, guarding and insuring the right of a voter to cast his vote in a -free election without fear of his decision being known or disclosed. A ballot susceptible of identification by any distinguishing mark or characteristic pursuant to which it may subsequently be identified, tends to promote bribery of voters thus leading to corruption in elections, and to avoid such undesirable result will be rejected as invalid and illegal. Courtney v. Abels, 205 La. 559, 17 So.2d 824. A distinction is made, however, between a mark which on one hand will identify a ballot as having been cast by a particular voter and one which, on the other hand, merely indicates the attempt of an elector to correct an honest mistake or error in marking his ballot because the courts are equally ardent to preserve and safeguard the right of the voter to cast his ballot and have it counted. Courtney v. Abels, supra.
The recount of absentee ballots conducted in the Court below by the three “counters” appointed by the Trial Judge resulted in ballots being challenged as illegal or “spoiled” for reasons which may be categorized as follows:
(1) Three ballots in favor of O’Niell marked in ink instead of with a pencil containing black lead as required by LSA-R.S. 18:1074, as amended by Act IS of 1962, offered in evidence by Cusimano as C — 1, C-25 and C-27, and held void by the trial court;
(2) Three ballots cast for O’Niell marked with a check instead of a cross or N mark as required by LSA-R.S. 18:1074, introduced in evidence by appellee as C-5, C-13 and C-23, declared “spoiled” by the lower court;
(3) One ballot in favor of O’Niell, marked with a check and part of a cross or X mark to indicate the voter’s choice, filed in evidence by Cusimano as C-6, and held null by the trial court;
(4) Ten ballots (7 for O’Niell and 3 for Cusimano) containing supposed markings relating to offices other than that in contest ; introduced in evidence by Cusimano as C-2, C-3, C-4, C-12, C-17, C-19 and *152 C-22 and by O’Niell as 0-1, 0-2 and 0-3, all ten of which were declared valid;
(5) Thirteen ballots in favor of O’Niell on which the numbered stubs required by LSA-R.S. 18:316 as amended by Act 365 of 1964, were left attached; offered in evidence by Cusimano as C-7, C-8, C-10, C-ll, C-14, C-15, C-18, C-20, C-21, C-26, C-28, C-29 and C-30. In addition C-18 was voted in ink and C-20 bore evidence of a signature attached thereto; all thirteen of which said ballots were declared invalid;
(6) One O’Niell ballot bearing a carbon copy of a signature, which vote was ruled "spoiled” ;
(7) Two Cusimano ballots, introduced as 0-4 and 0-5, containing what might be considered distinguishing or identifying marks consisting of a small pencil dot adjacent to one of the lines forming the X in the square opposite the candidate’s name (0-4) and a mark in the square consisting of what appears to be a slight upward stroke from the bottom of one of the arms of the X marks opposite Cusimano’s name. The trial court allowed 0-4 but rejected 0-5.
(8) Two ballots, one for O’Niell and one for Cusimano, containing what appears to be tears, introduced by O’Niell as 0-7 and by Cusimano as C-16. The ballot for O’Niell having a crumpled or crimped area near the top of its right edge while that for Cusimano had a slight tear on its right hand edge opposite the square designated for casting of the vote for Mayor. Both of said votes were allowed.
(9) One ballot for Cusimano in which one of the lines forming the cross mark opposite the candidate’s name was written over or retraced, offered as 0-6 and allowed as valid by the trial court, and
(10) Three ballots, two for O’Niell offered by Cusimano and marked C-24 and C-31, and one for Cusimano offered by O’Niell and marked 0-8, on which portions of the cross mark extend beyond the limits of the square in which the ballot must be marked and also on which a portion of the cross mark appears to have been written over or retraced, all three of which were permitted to be counted.
Certain provisions of our primary election law make it obvious the Legislature-had no intention to repeal or rescind the-rule of secrecy surrounding the manner in which an elector shall cast his ballot. For example LSA-R.S. 18:1168(1) stipulates, that voting machines shall be so constructed as to insure the voter secrecy in casting of his ballot. With regard to absentee votes LSA-R.S. 18:1074 requires the voter to mark his ballot in such manner that the officer or person present does not see the candidate for whom he votes.
 It has been held that failure to remove the numbered perforated slip attached to the ballot as required by law vitiates the ballot as one identifiable and consequently cast in violation of the secrecy rule. Courtney v. Abels, 205 La. 559, 17 So.2d 824; Perez v. Cognevich, 156 La. 331, 105 So. 444. We can think of no more infallible manner of identifying a ballot than the casting of one with a number attached thereto. While such a ballot may not necessarily have been cast with fraudulent intent or in bath faith, nevertheless each elector is presumed to know the law renders invalid an identifiable ballot. While fraud is not charged herein, it is not necessary that it be charged to render a ballot “spoiled.” It is sufficient that if the elector so marks his. ballot or permits it to be cast with an identifiable mark or symbol thereon, the-ballot may not be counted.
Counsel for appellant cites and relies upon Jarreau v. David, La.App., 74 So.2d 218, but we find the case readily distinguishable-because in the Jarreau case the voter cast a valid ballot the secrecy of which was. destroyed by the manner in which the ballots were opened and counted by the commissioners. The decision in the Jarreau: case makes it clear that the voters therein: *153 in no way participated in the action which rendered the ballot invalid. However, a voter who casts a ballot with a numbered slip attached thereto is not in the same position; it is his own action, albeit innocently, that makes his vote identifiable and destroys its secrecy. We conclude therefore that the Trial Court properly rejected those ballots with numbered slips attached. The same reasoning applies to the O’Niell ballot bearing a signature thereon.
With regard to C-S, C-13 and C-23 marked with a check mark instead of a cross as required by law, it is settled law that such ballots are invalid. Vidrine v. Eldred, 153 La. 779, 96 So. 566. The same applies to C-6, which was marked with a check mark instead of a cross, Vidrine v. Eldred, supra.
Ballots marked in ink instead of with a pencil containing black lead as required by LSA-R.S. 18:1074, as amended by Act 18 of 1962, are illegal and may not be counted, Vidrine v. Eldred, supra.
With respect to 0-5, the Trial Court expressed the opinion that the slight, almost imperceptible upward stroke from the bottom of one of the arms of one of the cross marks opposite Cusimano’s name, was in .all probability inadvertently made by the elector, and in this conclusion we are in-elined to agree. The slight upward stroke appears to be nothing more than the inadvertent failure of the elector to lift the pencil in a clean motion, thus resulting in an imperfection of no particular signifi-eance and we, therefore, do not conclude it to be an identifying mark.
Considering next C-16, which has a crimp or crumpled edge near the right top and 0-7, which has a slight tear on its right 'hand edge opposite the square designated for the office of Mayor, we feel as did the 'Trial Court both said ballots to be valid. 'The crimp and tear are of such nature as to indicate the probability that these results occurred inadvertently in the handling of these ballots. Neither ballot gives any indication of having been deliberately marked.
0-6 in which one of the lines forming the cross opposite Cusimano’s name was written over or retraced, we believe rightfully to have been declared valid.
We next have C-24, C-31 and 0-8 on all of which some portion of the cross mark opposite the candidate’s name extended beyond the square in which the ballot is to be marked. Nothing on either ballot indicates an intention to identify the ballot. Moreover, since the alleged irregularities are substantially the same on all three ballots, all must stand or fall. If invalid, the result would be a net loss of one vote for appellant.
C-6 in favor of O’Niell, marked with a check and part of a cross or X was also properly declared invalid. Vidrine v. El-dred, supra.
This leaves C-2, C-3, C-4, C-12, C-17, C-19, C-22, 0-1, 0-2 and 0-3, all of which are declared valid despite improper markings opposite the names of candidates for offices other than that of Mayor. As previously noted, all were declared valid. Since the irregularities complained of in each case are virtually identical, appellant has no cause for complaint because again rejection of all ten ballots could result in a net loss of 4 votes to him.
For the reasons hereinabove set forth, we conclude the judgment of the Trial Court declaring plaintiff Cusimano to have received a total of 1501 valid ballots, and appellant O’Niell an aggregate of 1489, and ordering the Committee to declare Cusi-mano the Democratic nominee for the office herein involved to be correct and proper, and the judgment is affirmed.
Judgment affirmed.