330 So.2d 383 (1976)
Roger Dale McGEE, Plaintiff-Appellee,
v.
Conrad FUSELIER et al., Defendants-Appellants.
No. 5506.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1976.
On Application for Rehearing April 20, 1976.
Tate & Tate, by Donald J. Tate, Mamou, for defendant-appellant.
John C. Fontenot, Ville Platte, for plaintiff-appellee.
I. Stephen George, Baton Rouge, for defendant-appellee.
Before HOOD, CULPEPPER, DOMENGEAUX, WATSON and GUIDRY, JJ.
PER CURIAM.
This is an election contest instituted under the provisions of LSA-R.S. 18:420. That statute provides that when an appeal *384 is taken in such a case the appellate court will decide the issue within 24 hours after submission. LSA-R.S. 18:420E.
After considering the facts, the law and the arguments of counsel, we have concluded that there is no error in the judgment rendered by the trial court.
In view of the provisions of LSA-R.S. 18:420E, we have decided to render judgment at this time affirming the judgment appealed from. Reasons for that judgment will be assigned at a later date.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant, Conrad Fuselier.
HOOD, Judge.
Roger Dale McGee, a candidate for Justice of the Peace for Ward 3 in Evangeline Parish, instituted this suit for judgment ordering a recount of the absentee ballots cast in four precincts of that ward at a general election held on December 13, 1975. The defendants are Conrad Fuselier, also a candidate for the above office, and Walter Lee, the Clerk of Court for Evangeline Parish. The court appointed counters for that purpose, and the absentee ballots eventually were recounted. Judgment was rendered by the trial court on March 16, 1976, decreeing that plaintiff McGee had obtained a majority of the votes cast at that election. Defendant Fuselier appealed.
This case was consolidated for appeal with two other related cases: Roger Dale McGee v. Board of Supervisors of Elections et al., 330 So.2d 391 (No. 5505 on our docket); and Conrad Fuselier v. Roger Dale McGee et al., 330 So.2d 392 (No. 5516 on our docket). A separate judgment is being rendered in each of these consolidated cases.
These consolidated appeals were argued before us on April 7, 1976. LSA-R.S. 18:-420E requires that the appellate court decide the issue presented in a case of this kind within 24 hours after submission. In view of that requirement, we rendered judgment in each case on that date, April 7, affirming the trial court in each instance, and we now assign our reasons for those judgments.
At a general election held on December 13, 1975, McGee and Fuselier were the only candidates for election as Justice of the Peace for Ward 3 in Evangeline Parish. Following that election, an unofficial tabulation of the votes cast indicated that Fuselier received 1372 votes and that McGee received 1371 votes. The Honorable Walter Lee, Clerk of Court, verified the election returns, and on December 16, Fuselier was declared to have been elected to the above office.
On December 17, 1975, McGee instituted this suit against Fuselier and the Clerk of Court, seeking a recount of the absentee ballots cast in Precincts 2, 3, 6 and 7 of Ward 3, in Evangeline Parish. The recount was demanded under the provisions of LSA-R.S. 18:420, and four counters were appointed by the trial court for that purpose. Defendant Fuselier filed pleadings attacking the constitutionality of LSA-R.S. 18:420, however, and pursuant to those pleadings a rule was issued directing plaintiff McGee to show cause why that statute should not be decreed to be unconstitutional and why this suit should not be dismissed. A hearing was held on December 19, and at that hearing the trial court indicated that the above statute would be held to be unconstitutional. Judgment was rendered on December 29, 1975, decreeing LSA-R.S. 18:420 to be unconstitutional and dismissing plaintiff's suit. McGee appealed directly to the Louisiana Supreme Court.
On December 22, 1975, which was after a hearing had been held but before judgment was rendered in the instant suit, plaintiff McGee instituted a separate suit against the Board of Supervisors of Elections, Evangeline Parish, seeking a mandamus ordering that board to recount the absentee ballots cast in the four above mentioned *385 precincts. An alternate writ of manadamus was issued by the trial court ordering the Board of Supervisors to recount the absentee ballots, as prayed for, or to show cause why it should not be required to do so. After a hearing, judgment was rendered by the trial court on December 29, 1975, dismissing that mandamus suit. McGee appealed that judgment to the Supreme Court, and that case was consolidated with the instant suit for appeal in that court.
The Supreme Court rendered judgment on February 23, 1976, reversing the judgment rendered in the instant suit on December 29, 1975, and reversing the judgment rendered in the later suit filed by McGee against the Board of Supervisors of Elections. The court held that LSA-R.S. 18:420 was constitutional, and it remanded both of those cases to the trial court for further proceedings in accordance with the views therein expressed. See Roger Dale McGee v. Walter Lee et al., 328 So.2d 159 (No. 57,321 on the docket of the Supreme Court), and Roger Dale McGee v. Board of Supervisors of Elections, 328 So.2d 159 (No. 57,323 on the docket of the Supreme Court).
Upon remand, both of the above cases were consolidated for trial, counters were appointed by the trial judge, and the absentee ballots were recounted on March 11, 1976. A recount of the absentee ballots cast in the four precincts specified by plaintiff indicated that McGee, rather than Fuselier, received a majority of the total votes cast for the office. Defendant Fuselier then demanded that the remaining absentee ballots cast in Ward Three be recounted, and the trial court thereupon ordered that all of the absentee votes cast in that ward be recounted, despite an objection by plaintiff. A recount of all absentee ballots cast in that words also indicated that plaintiff McGee received a majority of the votes cast for the office of Justice of the Peace. The recount showed that McGee received 51 absentee votes and that Fuselier received 20 such votes. The result of the election as shown by that recount, including the machine votes and the absentee votes cast, was:
Roger Dale McGee 1,367
Conrad Fuselier 1,365
Judgment was rendered by the trial court in both of the consolidated cases on March 16, 1976, decreeing the result of the election to be as shown by the above recount. The effect of that judgment was to decree that McGee was elected to the office. Defendant Fuselier appealed both cases to this court. (No. 5505 and 5506 on our docket).
On March 16, 1976, that being the date on which the last mentioned judgment was rendered, Fuselier instituted another suit against McGee, and against the Clerk of Court, the Evangeline Parish Board of Supervisors of Elections, and the Secretary of State. In that suit he seeks a judgment (1) granting a preliminary injunction prohibiting defendants from promulgating the results of the election as set out in the judgment rendered on March 16, 1976, (2) disallowing all absentee votes cast for the office of Justice of the Peace in Ward 3, (3) disallowing any change in the official tabulation of the results of the election as promulgated by the Secretary of State, (4) decreeing Fuselier to be elected to the office of Justice of the Peace in that Ward, and (5) in the alternative, annulling the election and ordering that another election be called. A number of exceptions were filed by defendants. After a hearing, judgment was rendered by the trial court on March 25, 1976, decreeing that defendants are "enjoined preliminarily" from undertaking to promulgate the result of the above election as set forth in the judgment of March 16, 1976, but dismissing all other demands of plaintiff, with prejudice. Plaintiff Fuselier appealed (No. 5516 on our docket), and that case has been consolidated for appeal with the two other related suits which previously were appealed to this court.
*386 Fuselier thus is the appellant in all three suits which are before us on appeal. He contends first that the trial court erred in refusing to require, as a condition precedent to recounting the absentee ballots, that McGee produce satisfactory evidence that the absentee ballots had not been tampered with or disturbed subsequent to the date of the election.
LSA-R.S. 18:364, relating to primary elections, had as its source Act 46 of 1940, enacted before voting machines were authorized. The 1940 act provided a procedure for the recount of "all or any specified ballot boxes," and it provided that "before any box is thus recounted satisfactory evidence shall be produced to the court that the box or the contents thereof have not been tampered with or disturbed subsequent to its closing by the commissioners."
The above section of the Revised Statutes has been superseded by LSA-R.S. 18:420, which is a part of the open election laws adopted by the Louisiana Legislature in 1975 (Act. 1 of 1975). The new law provides a procedure for recounting "all or any specified absentee ballots," and although the 1975 act uses some of the language which appears in LSA-R.S. 18:364, it omits the requirement contained in the old law that evidence be produced prior to a recount establishing that the absentee ballots or the ballot boxes have not been tampered with or disturbed.
Defendant Fuselier concedes that the statutes no longer require proof of non-tampering before a recount of votes can be had. He contends, however, that jurisprudence has been established to the effect that such proof is required as a prerequisite for a recount, even though the statutes do not require it. He relies on McConnell v. Salmon, 174 La. 606, 141 So. 73 (1932); Dutel v. Domingues, 166 La. 301, 117 So. 232 (1928); and Hill v. Vernon Parish Democratic Executive Committee, 56 So. 2d 868 (La.App. 1 Cir. 1952).
In the cited cases the courts held that as a prerequisite to a recount of ballot boxes, satisfactory evidence must be produced to show that the boxes have not been tampered with subsequent to being closed by the commissioners. In Hill, the court merely applied the provisions of LSA-R.S. 18:364, which specifically required such evidence but which has now been superseded by LSA-R.S. 18:420, containing no such requirement. The McConnell and Dutel cases were decided before there was a statutory requirement to that effect, and we agree that they tend to support defendant's argument.
We believe, however, that the Legislature intended to omit from Act 1 of 1975 (LSA-R.S. 18:420) the requirement that evidence of non-tampering be produced as a prerequisite to a recount of absentee ballots. In our opinion the lawmakers intended to do away with that requirement. Absentee ballots now are generally locked in voting machines after the results have been tabulated, and the law provides for the safekeeping of those machines. There thus is less likelihood that absentee ballots could be tampered with now than was possible when they were kept with other ballots in ballot boxes after the closing of the polls. This might have been a circumstance which the Legislature considered when it deleted from the 1975 open election laws the old requirement that evidence of no tampering be produced. Regardless of the reasons, however, we feel that the Legislature has intentionally omitted such a requirement from the law relating to the recount of absentee ballots.
We have concluded that the trial judge did not err in permitting the recount of the absentee ballots in this case, without requiring that plaintiff first prove that those ballots had not been tampered with or disturbed.
We note, in connection with the above ruling, that neither defendant nor anyone else has alleged or attempted to show that the absentee ballots were tampered with after the results were tabulated by the commissioners. The question is not presented, *387 therefore, as to whether a defendant may prevent a recount by an affirmative showing that the ballots were tampered with or disturbed between the time the votes were tabulated and the time of the recount.
Fuselier contends next that the trial court erred in failing to require that the counters, as the first step in the recounting procedure, examine the affidavits on the flaps of the envelopes containing the absentee ballots, and compare the information contained on each such flap with the Precinct Register to determine whether the affidavit was properly executed and whether the affiant was qualified to vote at that election. The thrust of his argument is that the court-appointed counters should be required to follow the same procedure in recounting the absentee ballots as were required of the commissioners at the time the votes were tabulated originally. We find no merit to that argument.
The law provides that at the close of the polls the commissioners must compare the information shown on the flap of the envelope containing an absentee ballot with the information contained on the Precinct Register to determine whether the absent voter is a registered and qualified elector in that precinct. If they find that he is a qualified elector and that he has not voted in person on that day, the commissioners then are required to tear the flap from the envelope, leaving the envelope sealed and intact. The envelope thereafter cannot be identified as containing the ballot of a particular voter. The detached flaps are placed in a separate envelope, and the commissioners then proceed to open the sealed envelopes containing the absentee ballots and to count and tabulate the votes as shown by those ballots. See LSA-R.S. 18:-1076.
After the flaps have been torn from the envelopes containing the absentee ballots, it is impossible to identify an absentee ballot as having been cast by a particular voter. A requirement that the counters examine the affidavits on the flaps of the envelopes containing absentee ballots thus would not enable them to determine whether any particular ballot should or should not be allowed.
It may be proper, in an action to annul an election, for the court to compare the information contained on the flaps of the absentee ballot envelopes with the information contained on the Precinct Registers, to determine whether irregularities or fraud existed sufficient to void the election. We agree with the trial judge, however, that no useful purpose would be served, in a proceeding for the recount of votes cast in an election by, requiring the counters to examine the flap-affidavits which previously were torn from the absentee ballot envelopes.
Even if the court-appointed counters should be required to examine the flap-affidavits, we find that defendant is now precluded from challenging the qualifications of any of the absentee voters, because of his failure to timely challenge those voters or the absentee ballots cast by them pursuant to the provisions of LSA-R.S. 18:-1077.
The law provides that the Clerk of Court, immediately upon receipt of an envelope containing an absentee ballot, must post the names of all persons voting absentee ballots, with their wards and precincts, in a conspicuous place accessible to the public. LSA-R.S. 18:1075. The procedure for challenging an absentee voter or an absentee ballot is set out in LSA-R.S. 18:1077, which reads:
"The challengers of the respective parties or candidates may be present during the casting of the ballots under this Part. Any voter under this Part may be challenged for cause, the same as if the voter were present and voted in person. The commissioners or a majority of them may hear and determine the legality of the ballot. However, if a challenge is *388 sustained, the commissioners shall give notice by mail addressed to the voter's place of residence."
Our jurisprudence is settled that the time for challenging the qualification of a voter to cast an absentee ballot is before the flap is torn from the envelope containing that ballot, or at least before the absentee ballot is removed from the envelope and counted by the commissioners. The failure to timely challenge the qualifications of the voter precludes the subsequent challenge of any particular absentee ballot on the ground that the voter was not qualified to cast a vote at that election. See Love v. Cross, 158 So.2d 614 (La.App. 3 Cir. 1963).
In the instant suit defendant does not allege, and he has not shown, that any of the absentee ballots cast at the above election were protested before those ballots were removed from the sealed envelopes and tabulated by the commissioners. Defendant thus, because of his failure to timely challenge the right of the voter to cast an absentee ballot, is precluded from challenging the validity of a particular absentee ballot on the ground that the voter was not qualified to cast such a vote at that election.
We agree with the trial court that in an action to recount votes the counters are not required to examine the affidavits on the flaps of the envelopes containing absentee ballots, or to compare the information on those flaps with the Precinct Register, to determine whether the voters were qualified to cast absentee ballots at that election.
Fuselier contends also that the trial judge erred (1) in declaring certain absentee ballots to be spoiled, over objections urged by defendant, and in not allowing them to be tabulated by the court-appointed counters, and (2) in ruling that other absentee ballots cast in that election were valid and could be counted, despite objections made to such ballots by Fuselier.
The trial judge concluded that 12 of the absentee ballots, marked "S-1" through "S-12," were spoiled and should not be tabulated by the court-appointed counters. He overruled objections to ten other absentee ballots, marked "0-1" through "0-10," holding that those ballots were valid and should be included in the tabulations made by the counters.
Defendant Fuselier contends on this appeal that the trial judge erred in declaring that four of the absentee ballots, marked S-2, S-3, S-5 and S-6, were spoiled, and in refusing to allow them to be counted. He also contends that the trial court erred in decreeing, over defendant's objections, that eight of the absentee ballots, marked "0-1," "0-3," "0-4," "0-5," "0-6," "7,""0-9" and "0-10" were valid, and in allowing those ballots to be included in the tabulations made by the counters.
Our Supreme Court, in Courtney v. Abels, 205 La. 559, 17 So.2d 824 (1944), set out the general rules which are to be applied in determining the validity of contested ballots. The court, quoting with approval from Ruling Case Law, Vol. 9, page 1136, under the topic "Elections," said:
"A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it, and to furnish means of evading the law as to secrecy. Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in a declaration of invalidity. If it appears from the face of the ballot that the marks or writing were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election and that the voter did not thereby pretend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is a choice expressed, in compliance with the requirements of the statutes.'"
*389 In Cusimano v. O'Niell, 192 So.2d 147 (La.App. 1 Cir. 1966), the First Circuit Court of Appeal said:
"It is settled jurisprudence that the law and the courts as well regard the secrecy of the ballot as sacred and are most fervent in protecting, guarding and insuring the right of a voter to cast his vote in a free election without fear of his decision being known or disclosed. A ballot susceptible of identification by any distinguishing mark or characteristic pursuant to which it may subsequently be identified, tends to promote bribery of voters thus leading to corruption in elections, and to avoid such undesirable result will be rejected as invalid and illegal.Courtney v. Abels, 205 La. 559, 17 So.2d 824. A distinction is made, however, between a mark which on one hand will identify a ballot as having been cast by a particular voter and one which, on the other hand, merely indicates the attempt of an elector to correct an honest mistake or error in marking his ballot because the courts are equally ardent to preserve and safeguard the right of the voter to cast his ballot and have it counted. Courtney v. Abels, supra."
We quoted and applied the above rules in Angelle v. Angelle, 204 So.2d 581 (La.App. 3 Cir. 1967). See also the cases cited in Angelle.
With these general rules or guidelines in mind, we have examined each of the ballots which appellant Fuselier contends were erroneously held to be spoiled or held to be valid by the trial court. We consider first the ballots which were held to be spoiled.
Absentee ballot marked "S-2" was torn, the tear or tears being about four inches long, near the center of the ballot. The trial judge considered it to be a mutilated ballot, capable of being identified, and he ruled that it was spoiled and should not be counted. We find no error in that ruling.
The ballot marked "S-3" contained a circle, drawn with a lead pencil, around the vote cast for one candidate, and the word "Spoiled" was written in pencil on the face of the ballot and again on the back of it. The "X" marks on the ballot were made with ink. The commissioners regarded the ballot as being spoiled and did not count it. Fuselier argues that the pencil marks on the ballot, including the circle around the vote cast for one candidate, must have been made by the commissioners, since the voter obviously used ink to mark the ballot. The trial judge felt that defendant's argument was conjectural. He held that the ballot was spoiled and should not be counted. We agree.
The ballot marked "S-5" contained a circle in blue ink around the word "Agriculture," which appeared in the phrase "For Commissioner of Agriculture" on the ballot. The trial court correctly decreed that ballot to be spoiled.
On Ballot "S-6" four votes were cast. In three of them a square was superimposed with a lead pencil over the block in which the choice of the candidate had been entered. The trial court properly rejected that ballot as having been spoiled.
We turn now to the absentee ballots which the trial judge held to be valid, over objections urged by Fuselier. On ballots marked "O-1" and "O-3" some of the penciled cross marks appear to have been retraced. The trial judge felt that those slight irregularities were not intended to be, and could not serve as, identifying marks. He held these ballots to be valid, and we agree.
One of the cross marks on the ballot marked "O-4," indicating a vote for a candidate other than Justice of the Peace, appears to have been erased. The trial judge held that the ballot was valid. An erasure which has no distinguishing feature, and which may not reasonably be assumed to have been intended as an identifying mark *390 by the voter, will not invalidate the ballot. Courtney v. Abels, supra; Angelle v. Angelle, supra. We agree with the trial judge that this ballot was valid and should be counted.
Ballots marked "O-5" and "O-10" contain minute marks which appear to have been made by the voter's inadvertent failure to lift his pencil or pen from the ballot after marking his vote. Neither of these marks is sufficient to serve as an identifying mark. We think the trial court correctly held both of those ballots to be valid.
The ballots marked "O-6," "O-7," and "O-9" were objected to by Fuselier on the ground that the cross marks on those ballots appear to be irregular, thus constituting an identifying feature. We find nothing so distinctive or irregular in the cross marks appearing on ballots "O-6" and "O-7" that they can serve as identifying marks. On ballot "O-9" one of the marks appears to resemble a "T" more than an "X." We have concluded, however, that this was not intended to be, and cannot reasonably serve as, an identifying mark. We find no error in the ruling of the trial court, therefore, that all three of these ballots are valid and should be counted.
Our conclusion is that the trial court ruled correctly as to the validity or invalidity of each of the ballots which were contested. The results of the election as determined by the trial court are correct.
Fuselier contends, finally, that the trial judge erred in dismissing the suit which he filed on March 16, 1976 (No. 5516 on our docket).
In that suit Fuselier alleges a number of irregularities in the conduct of the election. His principal demand is for judgment disallowing all absentee ballots and declaring him to be elected as Justice of the Peace, Ward Three, Evangeline Parish. Alternatively, he prays for judgment annulling the election. Several exceptions were filed by defendants, including exceptions of (1) res judicata, (2) non joinder of an indispensable party, (3) no cause and no right of action, and (4) prescription.
As already noted, judgment was rendered by the trial court on March 25, 1976, enjoining defendants preliminarily from undertaking to promulgate the result of the election as set forth in the judgment rendered on March 16, 1976, with the provision that "this preliminary injunction shall continue in effect during the pendency of the appeal." The judgment decrees that "in all other respects, the suit of plaintiff is dismissed with prejudice."
The trial judge did not assign reasons for judgment, and we thus do not know the basis for his decision. Counsel for both parties feel, however, that he intended to sustain the exceptions of no cause and no right of action. We find no error in the judgment of the trial court dismissing this suit with prejudice, but we prefer to base our decision on the exception of prescription, or peremption, filed by defendants.
LSA-R.S. 18:420H provides:
"H. No contest shall be entertained unless brought within two days after the official promulgation of the result of the election."
Fuselier alleges in his petition that "by official promulgation in the official state journal, the State Times, Baton Rouge, Louisiana, of Friday, January 2, 1976, petitioner, Conrad Fuselier, was declared duly elected to the office of Justice of the Peace in and for Ward Three of Evangeline Parish, Louisiana." The instant suit was filed on March 16, 1976, which was substantially more than two days after the official promulgation of the result. The action thus appears to be barred by the peremption provided in LSA-R.S. 18:420H. See Austin *391 v. Dupre, 328 So.2d 406 (La.App. 1 Cir. 1976).
Fuselier contends, however, that his suit was instituted under the provisions of LSA-R.S. 18:1251, which provides that an action to contest an election may be instituted within 30 days after the official promulgation of the result. He takes the position, as we understand his argument, that the prescriptive, or peremptive, period provided in that statute should not have begun to run until after the recount of the votes was completed and judgment was rendered changing the results of the election.
We believe that LSA-R.S. 18:1251 has been superseded by LSA-R.S. 18:420. (See LSA-R.S. 18:423 and 841). Regardless of which section of the Revised Statutes applies, however, we conclude that the suit instituted by Fuselier on March 16, 1976, was filed too late. He knew at the time the results of the election were officially promulgated that suits were pending demanding a recount of the vote. There was nothing to prevent him from instituting a suit at that time contesting the election. His failure to institute such a suit within the peremptive period provided by either of the above statutes bars him from maintaining such an action now.
We agree with the judgment of the trial court which dismisses the suit instituted by Fuselier on March 16, 1976 (No. 5516 on our docket).
For the reasons assigned, we hereby confirm the judgment which we rendered in the instant suit on April 7, 1976. The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant, Conrad Fuselier.
AFFIRMED.
DOMENGEAUX, J., concurs in the decree.
WATSON, J., concurs in the result.