CULPEPPER, Judge.
This is an election contest. Plaintiff, El-den Brunet, and defendant, Johnny Chapman, were candidates for the office of Evangeline Parish Police Juror, District 7 in the October 27, 1979, primary election. Both the unofficial and official results showed the defendant, Johnny Chapman, receiving 612 votes and plaintiff, Elden Brunet, receiving 610 votes.
On October 31, 1979, plaintiff filed a petition in the Thirteenth Judicial District contesting the election and seeking a recount of the absentee ballots. Plaintiff alleged in his petition, that except for irregularities or *273 fraud in the voting, he would have been elected to the office.
In response to plaintiff’s suit contesting the election and seeking a recount of absentee ballots, defendant filed exceptions of no cause of action. The trial judge sustained the exceptions, dismissing plaintiff’s suit.
Plaintiff perfected an appeal to this court seeking reversal of the trial judge’s ruling. This court, finding that plaintiff’s petition stated a cause of action, reversed the trial court’s ruling and remanded the case to the district court for further consideration. Brunet v. Chapman, Docket No. 7559. Defendant’s application for writs of review to the Supreme Court were denied. Brunet v. Chapman, Docket No. 66,098.
On remand, the trial court ordered the production of the absentee ballots for recounting and set trial on the merits for November 19, 1979. Although votes for the contested office were cast in three different precincts, plaintiff contests only the votes cast in Ward Three, Precinct Three. The recount showed that fifty[1] absentee ballots were cast in Ward Three, Precinct Three. The Commissioners voided four of these ballots. The remaining 46 ballots, in which plaintiff received 13 votes and defendant received 33 votes, were held valid by the Commissioners.
At the trial, plaintiff contended that two ballots east for him and voided by the Commissioners should have been counted. Plaintiff also alleged that four ballots cast for Chapman should have been voided because they contained distinguishing marks.
The trial judge sustained the Commissioners’ action voiding four ballots. The Court, examining the four ballots objected to by the plaintiff, held that the Commissioners had properly voided these ballots. The recount left the official result unchanged.
Plaintiff also alleged that the election should be annulled because a voting machine malfunctioned and because of irregularities which appeared in the voting tabulation.
The trial judge, finding that plaintiff failed to prove his allegations by a preponderance of the evidence, dismissed plaintiff’s action. From this judgment, plaintiff has perfected this appeal.
Plaintiff-appellant makes the following assignments of error:
1. The Court erred in refusing to sustain Brunet’s motion that the absentee ballots be discarded in that they had been tampered with in violation of a Temporary Restraining Order issued by the Trial Court.
2. The Court erred in its failure to find that the four (4) or five (5) vote difference between the machine vote and the records kept by the Commissioners was the result of fraud and/or irregularities.
3. The Court erred in its failure to find that there was a voting machine malfunction sufficient to change the outcome of the election.
4. The Court erred in its failure to declare the two (2) spoiled ballots which were cast for Brunet to be valid votes for Brunet.
5. The Court erred in its failure to spoil the four (4) ballots numbered 17, 27, 31, and 41, in that they had clear identifying marks, especially if the two (2) ballots in (4.) above were spoiled.
Plaintiff contends that all absentee ballots cast in Ward Three, Precinct Three should have been voided because the Clerk of Court for the Thirteenth Judicial District opened the ballots in violation of the restraining order issued by the Thirteenth Judicial District Court. In the original suit, a temporary restraining order had been issued by the district judge prohibiting the promulgation of the election results. Apparently before the restraining order was removed, Walter Lee, Clerk of Court for the Thirteenth Judicial District, recounted the absentee ballots pursuant to an order issued *274 by the Nineteenth Judicial District Court. The order directed Mr. Lee to recount the absentee votes which were cast in the gubernatorial election.
Mr. Lee acted properly in obeying the court order. The recount was required as a result of an election suit filed in the Nineteenth Judicial District contesting the gubernatorial election. That court had authority to require a recount of the gubernatorial votes. Plaintiff’s contention that the absentee ballots cast in Ward 3, Precinct 3 should be voided because the Clerk of Court, Mr. Lee, recounted the votes is without merit.
However, even assuming that the Clerk’s action was a violation of the restraining order issued by the Thirteenth Judicial District, this irregularity does not annul the election. In Champagne v. Ackal, 256 So.2d 483 (La.App. 3rd Cir., 1972) this court, quoting with approval from Womack v. Nettles, 155 La. 359, 99 So. 290 (1924) stated:
“It is a principle underlying all law and jurisprudence in matters of election by the people that an election will not be set aside for mere irregularities and illegalities, nor for negligence and improper conduct of the election officers, unless it is shown that a sufficient number of voters were deprived of their votes to have changed the result.
Nor will an election be set aside, notwithstanding the misconduct of election officers, where the voters have had free and fair opportunity to express their will and have done so in a legal manner.” (Citations omitted)
In the instant action, we conclude that the Clerk’s action in recounting the absentee ballots in connection with another election suit was not such an irregularity as to void the absentee ballots case in Ward Three, Precinct Three. To hold otherwise would have the effect of preventing a free and honest expression of the will of the voters.
Plaintiff contends that the trial court erred in not voiding the election because of a five vote discrepancy which existed between the voting machine tabulation and the votes as recorded on the Commissioners’ poll lists.
It is undisputed that the machine tabulation exceeded by five votes the total number of votes as indicated on the Commissioners’ poll lists. Plaintiff contends that the Commissioners allowed five unqualified voters to vote in the election.
Mr. Hampton Fuselier, the Commissioner-in-charge on October 27, 1979, at Ward Three, Precinct 3, testified that the commissioners checked the totals on the poll list against the total on the machines a number of times during the day. In the morning, a discrepancy of two was discovered. Mr. Fuselier testified that after checking the two poll lists against one another, it was found that two names had been omitted from one of the poll lists. This discrepancy was corrected.
Mr. Hampton Fuselier further testified that late in the afternoon prior to the closing of the polls a further check between the poll lists and the machine total showed a difference of four (4) votes which the Commissioners were unable to account for.
Mr. Fuselier testified that at times voting was heavy and in some instances, voters entered the voting line prior to signing the precinct register and poll lists. On these occasions, the voter was made to sign the register and his name was entered on the poll lists. However, Mr. Fuselier stated that there could have been instances where the error was not detected and thereby corrected. Mr. Fuselier stated that to his knowledge no illegal votes were cast at the precinct.
Mr. Floyd Aucoin, a Deputy Commissioner, testified that he remembered the morning count between the poll register and the machine tabulation showed a difference of two (2) votes which the Commissioners were unable to account for. His testimony did agree with Mr. Fuselier that prior to the closing of the polls a difference of four (4) votes was noted.
*275 This testimony supports the trial court’s conclusion that the discrepancy was the result of human errors and not the result of fraudulent conduct on the part of the Commissioners.
We also note that the discrepancy complained of consists of four (4) votes out of a total of 1,290 votes cast in the three precincts voting for District 7 Police Jury. Although LSA-R.S. 18:1432 now provides the grounds for declaring an election void, the Supreme Court in Kelly v. Village of Greenwood, 363 So.2d 887 (1978), notes that the present statutory scheme is in accord with pre-election code jurisprudence on the issue. In Moreau v. Tonry, 339 So.2d 3 (La., 1976), the court, discussing the grounds for upsetting an election, stated:
“The statutory rule in Louisiana is that an election may be upset only if the one contesting the election can show that ‘but for irregularities or fraud he would have been nominated’.”
The court went on to add:
“If the candidate cannot prove he would have been elected ‘but for irregularities or fraud’, our jurisprudence refers to an alternative: if the Court finds the proven frauds and irregularities are of such a serious nature that the voters have been deprived of the free expression of their will, the election will be nullified.”
In the instant action, plaintiff submitted no proof as to which candidate received these four (4) votes allegedly cast by unqualified voters. In the absence of such proof, plaintiff has failed to prove that “but for” the irregularities he would have been elected.
Plaintiff also introduced testimony attempting to prove that voters had been prevented from voting for him because of a machine malfunction.
Calvin Aguillard, an employee of the Custodian of Voting Machines, testified that he received a call from one of the commissioners at Ward 3, Precinct 3, in which he was informed that there was a problem with one of the machines at the precinct. Mr. Aguil-lard testified that he arrived at the precinct at approximately 4:30 p. m., and along with two commissioners, broke the seal on the machine and discovered the problem. Mr. Aguillard testified that machine 2538, or the “middle” machine had jammed. Mr. Aguillard was of the opinion that the jam in the machine had occurred when a voter entered the machine, failed to vote for a single candidate and had then attempted to pull the master lever and record the votes. Mr. Aguillard testified that the machine was simply jammed and that he corrected the problem.
The trial judge found that although there was one minor incident of malfunction, no voter was prevented from casting his vote. An examination of the record does not reveal that this factual finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
Plaintiff presented several witnesses in support of his contention that a machine malfunctioned. Mr. Berzas testified that he attempted to vote for Mr. Brunet, but that he was unable to cast his vote for Mr. Brunet, because Key # 117 would not depress.
Mrs. Aymond testified that she voted for Mr. Brunet, but that it took her several attempts to depress Key # 117, the key number for Mr. Brunet. Clayton McGee testifies that he had to depress Key # 117 several times before it would register his vote for Mr. Brunet.
Mr. Fuselier, the Commissioner-in-charge, testified that he received complaints from a party, not a voter, that the keys on the middle voting machine were not working properly. Mr. Fuselier had the complaint investigated but found the machine in proper working order.
The record reveals that only Mr. Berzas testified that he was prevented from voting for Mr. Brunet. The trial judge, finding that no voter was prevented from casting his vote, apparently rejected the testimony of Mr. Berzas. We note that Mr. Berzas’ testimony was not completely credible. An examination of the record does not reveal that the trial judge was clearly wrong in rejecting Mr. Berzas’ testimony.
*276 Since no voter was prevented from voting, plaintiff has failed to prove that but for the irregularities, i. e. machine malfunction, he would have been elected. Plaintiff’s contention that the trial court erred in refusing to annul the election is without merit.
Appellant urges, as his next allegation of error, the trial court’s invalidating two (2) ballots which were cast for Mr. Brunet. The trial court invalidated these two votes because erasures appeared in the votes for other offices on the ballot.[2] Specifically, these two erasures appeared in boxes for candidates for the office of Treasurer and Commissioner of Agriculture. An examination of these ballots indicates that these ballots were clearly marked for Mr. Brunet and no erasures were present in the boxes for the office of Police Juror.
In Angelle v. Angelle, 204 So.2d 581 (La. App. 3rd Cir., 1967), we considered a similar situation. In Angelle we determined that erasures which were evident in boxes other than in the disputed race were not such a distinguishing feature which could be reasonably assumed to have been intended by the voter as an identifiable mark. In Herbert v. Landry, 193 So. 406 (La.App. 1st Cir., 1940), the court said:
“It is our own idea that the mark or erasure must be one that may be said to be personal to the particular individual who make it and placed on his ballot in accordance with an understanding made with some party who intended to destroy the secrecy of that ballot for the purpose of unduly influencing him in the election. The erasure on the ballot in this case is not such a mark, as what happened to the voter, who evidently made a mistake in the party he voted for and then corrected his mistake, is something which might well have happened to several other voters, and it would be impossible to tell from such erasure which was the particular ballot used by any one of them.”
The erasures in our present ease, as in Hebert v. Landry, supra, merely indicate an honest effort on the part of these voters to indicate their correct choices for office after making errors.
These erasures do not appear to have been placed on the ballot as an identifying mark for the purpose of destroying the secrecy of these ballots. We note that in oral argument counsel for the plaintiff points out that the Commissioners and the trial court held ballot number 44 to be valid and that ballot contains erasures in the office of Justice of the Peace and Treasurer which makes the Commissioners and trial court’s ruling with regard to the erasures on the two (2) ballots for Brunet inconsistent. Therefore, these two (2) votes should be counted. Thus, at these two (2) votes were cast for the appellant, the trial court erred in declaring them spoiled and Mr. Brunet is entitled to receive two additional votes.
The final allegation of error concerns the failure of the trial court to declare four (4) ballots, which were numbered 17, 27, 31, and 41, to be invalid. Each of these four ballots, which the appellant sought to have invalidated, indicated a vote for Mr. Chapman.
The trial court relied on Perez v. Cogne-vich, infra, in determining that the four (4) ballots were valid and should be counted for Mr. Chapman. In his written reasons for judgment the trial court stated:
“After a thorough inspection and examination of these four (4) ballots the court ruled them to be valid. The court considered these small dots, and the irregularly shaped “X” to be insignificant and not affecting the secrecy or sanctity of the ballots. Furthermore, it is impossible to determine who made them, or how or when they were placed thereon. Perez v. Cognevieh, 156 La. 331, 100 So. 444.”
We agree with the decision of the trial court that the small dots on the three *277 (3) ballots and the irregular “X” on the fourth were insignificant and did not affect the sanctity of the ballots. In McGee v. Fuselier, 330 So.2d 383 (La.App. 3rd Cir., 1976), we cited Courtney v. Abels, 205 La. 559, 17 So.2d 824 (1944) for the following proposition:
“A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it, and to furnish means of evading the law as to secrecy. Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in a declaration of invalidity. If it appears from the face of the ballot that the marks or writing were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election and that the voter did not thereby pretend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is a choice expressed, in compliance with the requirements of the statutes.”
It would be highly unfair and unduly technical to disenfranchise these voters by declaring these ballots spoiled due to these minute dots.
As a result of our decision regarding the erasures, which require Mr. Brunet to receive two additional votes, we declare the final tabulation to be 612 for Mr. Brunet and 612 for Mr. Chapman.
Due to the tie vote we can declare neither candidate elected and must order another election between these two candidates only.
For the above and foregoing reasons the judgment appealed is reversed and set aside. We hereby order the Board of Election Commissioners to call another election for the office of Police Juror, District Seven, Evangeline Parish to be participated in by all qualified voters of the district, as soon as reasonably possible. All costs of the trial and of this appeal are to be borne equally by the appellant and appellees.

. Actually 51 absentee votes were cast, but one absentee vote was by a voter deceased at the time of the election and the record reveals that the Commissioners cast this ballot aside without counting it and it is not in the record. We note also, all parties agree that this ballot was properly disregarded under LSA-R.S. 18:1316.

. Two additional ballots were declared spoiled by the trial judge. That these two ballots were properly declared spoiled, one (spoiled ballot # 3) because a voter had not placed an x in the box but rather Chapman’s Number 118 and the other (spoiled ballot # 4) because the vote was cast for a candidate that had previously withdrawn, is not contested by any of the parties.